## 59579. THE STATE v. LIVELY.

BIRDSONG, Judge.

The trial court granted defendant Gary W. Lively's motion to dismiss and/or quash the indictment on grounds that he was denied a speedy trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution. The state appeals.

The undisputed facts are as follows: Appellee Lively was arrested on May 17, 1974, for having allegedly committed aggravated sodomy upon a fourteen-year-old female. On July 25, 1974, he was indicted for that offense and for rape. A month earlier, in June, 1974, Lively posted bond in the amount of $10,000, bond having been set by court order on May 28, 1974.

The record is blank until more than four years later when on September 6, 1978, Lively's counsel filed a motion to dismiss the indictment. The motion alleged that four years and four months had passed since Lively was arrested and he had not been brought to trial; it alleged a denial of his speedy trial right; it alleged that the "intentional and prolonged delay has hampered his defense, unnecessarily punished him for crimes he did not commit, and has subjected him to . . . emotional stress. . . " Lively demanded dismissal of the indictment; he did not demand a speedy trial. The motion was apparently served on the district attorney but was never set down by Lively for hearing. No action was taken by any party on this motion.

A year later in October, 1979, Lively filed another motion to dismiss and/or quash the indictment, this time filing a brief and bringing the matter to hearing. It was then revealed that on September 12, 1977 (one year before Lively filed his first, unpursued motion to dismiss the Chatham County indictment), the State of Arkansas had brought extradition proceedings against Lively in Effingham County, Georgia, for the offense of escape. In January, 1978, Lively had filed a petition for writ of habeas corpus against the Sheriff of Effingham County and was released on bail; but fifteen months later, writ of habeas corpus was denied in Effingham County. He was extradited to Arkansas on May 11, 1979. Five months later he

filed the instant motion to dismiss the Chatham County indictment, which was granted.

The appellee Lively urged irretrievable prejudice in the denial of speedy trial because in 1976 one of his two alibi witnesses died. The trial court found that the total period of delay in the case (5-1/2 years) was both burdensome and unreasonable, that no justification for the delay was shown, that the defendant had previously asserted his right to a speedy trial, no subsequent action was taken by the state, and that the defendant was prejudiced by being deprived of the testimony of a material alibi witness. In so concluding, the trial court specifically noted that an accused who is released pending trial often has little or no interest in being tried quickly, and that the remedy of indictment dismissal is "inadequate"; but, the trial court noted, "the Supreme Court of the United States has held that the ultimate responsibility for bringing cases to trial lies with the state and not the accused. Strunk v. United States, 412 U. S. 434." Appellant, the state, urges error in this holding as the appellee demonstrated no prejudice resulting from the delay and as the appellee made no effort to secure his rights to speedy trial. *Held:*

The case must be examined in light of the principles set forth by the United States Supreme Court in Barker v. Wingo, 407 U. S. 514 (92 SC 2182, 33 LE2d 101), and appellate decisions of this state which have followed Barker (see e. g., *Fleming v. State,* 240 Ga. 142 (240 SE2d 37); *Hall v. Hopper,* 234 Ga. 625, 628 (216 SE2d 839); *Hughes v. State,* 228 Ga. 593 (187 SE2d 135); *State v. Weeks,* 136 Ga. App. 637 (222 SE2d 117)). Because Georgia cases have adhered to Barker, we deem it best in this case to adhere to Barker undiluted by subsequent applications.

We have examined both the forest and the trees of Barker, and we conclude that the trial court erred in ruling that Lively was impermissibly denied his constitutional right to speedy trial.

Barker is unique among constitutional-right cases in that it deals with a right which tends to be a great deal more vague, elusive and amorphous than any other constitutional right. The denial of the right to speedy trial is the one constitutional deprivation which can work to the accused's advantage; thus, failure to provide a speedy trial does not per se prejudice the accused's ability to defend himself (Barker, supra, pp. 519-521).

Moreover, the right itself is so slippery and amorphous in quality (What is "speedy?" When has the right been denied?) that a flexible approach in determining when it has been lost is the only possible approach. Each case must be analyzed on an ad hoc basis, upon its own particular facts and circumstances. The Supreme Court identified four factors which courts should assess in determining

whether a particular defendant has been deprived of his right to speedy trial: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. This balancing test is a delicate, sensitive process; the Supreme Court asseverates that each case must rely upon its own circumstances. Nevertheless, it is possible to infer some guidance from the Barker decision beyond the statement of the four factors.

The basis for the development of the highly subjective, flexible approach in Barker, is that the defendant is held to have some responsibility to assert a speedy trial claim (Barker, supra, p. 529) even though it is the state's duty to bring him to trial (Barker, supra, p. 527); and that unlike other constitutional rights, both society and the individual criminal defendant have a potential interest in either having a speedy trial or delaying any trial (Barker, supra, pp. 519-520, 528).

In Barker, supra, the court found a delay of well over five years—of which only seven months could be attributed to a strong excuse—to be "too long," and found the reason for the delay to be unacceptable (Barker, supra, p. 534). Yet outweighing these two deficiencies were the fact that the prejudice to the accused was minimal, and the fact that *Barker did not want a speedy trial.* This last proposition was garnered from the conclusions that Barker was probably hoping for an acquittal of the co-defendant whose conviction was essential to the prosecution's case against Barker, and that Barker never asserted his right to speedy trial. The Supreme Court held Barker was not deprived of his due process right to a speedy trial.

Under the analysis made by the Supreme Court in Barker, it certainly cannot be said that the "ultimate responsibility" of the state to provide a speedy trial is such that the state's unexcused failure to provide it creates a presumption of deprivation of the right or a burden on the state to prove otherwise, as the trial court seems to have perceived in the case sub judice. To the contrary, the plain tenor of Barker seems to be that society's interest in bringing the criminal defendant to trial is not per se outweighed by the individual's right to speedy trial.

The imposition of presumptions and burdens of persuasion is not generally consistent with the system of delicate balancing of factors approved by Barker. However, it is clear from Barker that since mere delay, even if unexcused, does not alone prejudice the defendant's ability to defend himself, and since he may be only too delighted to have his trial delayed, before he is held deprived of the right and there ensues the "unsatisfactorily severe remedy of dismissal of the indictment . . . [with the] serious consequence . . . that

a defendant who may be guilty of a serious crime will go free, without having been tried" (Barker, supra, p. 522), he must show some actual substantial prejudice to himself.

In Barker, supra, much is made of that defendant's failure to assert his right to speedy trial, but it must be conceded that if Barker had shown actual prejudice in the delay, the analysis would have assumed a different slant. Although the point is often obscured, Barker both in analysis and in result ultimately makes it clear that while the defendant has a right to speedy trial, society has a corresponding equivalent right to bring him to trial; and while the state has a duty to bring him to speedy trial, the defendant has a responsibility to assert that right. Both parties and interests stand alike at the beginning. The fact that the state has a duty to provide a speedy trial does not impose a paramount legal burden on the state, but is simply the logical syntactical reconciliation of the two rights: since society has the right to try him and he has the right to be tried quickly, if society tries him, it must do so quickly, particularly if he has asserted the right. But since both parties do stand alike at the beginning, when both parties stand alike in their respective failures to provide and assert the right to speedy trial, *then because of the peculiar nature of the individual's right to speedy trial as one whose deprivation can definitely work to his advantage,* the weight of the equities generally lies naturally with society and its right to try the criminal defendant (see Barker, supra, p. 536, where it is held that "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right (to speedy trial) on a record that strongly indicates that the defendant did not want a speedy trial"). The trial will thus generally be held, unless the defendant can show some actual prejudice to his ability to defend himself, for in that case the delay has unquestionably worked to the state's advantage, and the greater weight of the rights must lie with the defendant. And, of course, upon defendant's bona fide assertion of the right, the unexcused denial of it by the state is generally prejudice per se.

In the case before us, it is not disputed that the reason for the delay in trial was simple neglect on the part of the prosecution. As in Barker, supra, we have 5-1/2 years of unexcused delay—an extraordinary delay, "too long." But, as in Barker, only minimal prejudice is shown by the defendant Lively: one of his two alibi witnesses died in 1976, two years after indictment. The deceased witness allegedly would have testified, with his wife, that defendant was having breakfast with them at the time of the offense. The prejudice here is minimal. Since the wife is still available for testimony, the testimony of the deceased witness would be merely

cumulative. *Hughes v. State,* supra. Lively has not shown any other circumstance from which it can be concluded that he is substantially prejudiced by the unavailability of the witness, or that the deceased witness' testimony was uniquely vital to his defense.

In addition to the absence of serious prejudice is the apparent fact that Lively did not want a speedy trial (see Barker, supra, p. 534). In Barker, the defendant filed a motion to dismiss the indictment for no stated reason, 4-1/2 years after indictment, but he made no alternative motion for immediate trial. Instead, the Barker record strongly suggested that while Barker "hoped to take advantage of the delay in which he had acquiesced, and thereby obtained a dismissal of the charges, he definitely did not want to be tried." This is precisely the situation in the case before us. Although Lively after 4-1/2 years' delay sought to dismiss the indictment because of the denial of speedy trial and resultant prejudice, *he did not ask for a trial.* He hoped to take advantage of the delay in which he had acquiesced for 4-1/2 years, but still did not want to be tried. The record strongly suggests that it was to his advantage to lie low in Effingham County while Arkansas sought extradition, and a trial and possible imprisonment in neighboring Chatham County would have jeopardized his avoidance of extradition. The motion to dismiss or quash the indictment for denial of speedy trial, which did not request an immediate trial, *is not a demand for trial* (Barker, supra, p. 529) and is not an assertion of the right to speedy trial (Barker, supra, pp. 534-535).

Under the particular facts of this case, the defendant was not denied his constitutional right to a speedy trial. Although the determination is in every case a matter of judicial discretion (Barker, supra, pp. 528, 529), the trial court in this case erred as a matter of law in holding that Lively had asserted his right to speedy trial by merely moving to dismiss the indictment; and in holding that he suffered actual prejudice by the death of an alibi witness whose testimony is merely cumulative; and in granting an overwhelming weight of legal burden to the duty of the state to provide a speedy trial, as against the failure of the defendant to assert his right to speedy trial in 5-1/2 years and the minimal prejudice caused by the delay.

We do not rule that the state's failure to try Lively in 5-1/2 years is excusable—it is not; nor that such gross neglect in the state's avoidance of its duty to provide a speedy trial will be tolerated. But as it happens in this case, the defendant apparently did not want a speedy trial and has shown no actual prejudice; it is therefore no credit to the prosecution that the greater weight of the rights and interests in this case lies with society.

*Judgment reversed. Deen, C. J., and Sognier, J., concur.*

ARGUED MARCH 5, 1980 — DECIDED JUNE 27, 1980 —
REHEARING DENIED JULY 21, 1980 —

*Andrew J. Ryan, III, District Attorney. Robert M. Hitch, III,
Assistant District Attorney,* for appellant.
*Reginald C. Haupt, Jr.,* for appellee.