## A94A0964. NAIRON v. THE STATE.
### (449 SE2d 634)

ANDREWS, Judge.

Nairon was convicted by a jury of exceeding the maximum motor vehicle speed limit in violation of OCGA § 40-6-181.

1. Nairon claims the trial court erred in denying his motion to dismiss the speeding charge because he was denied the right to a speedy trial under Art. I, Sec. I, Par. XI of the Georgia Constitution and under the Sixth Amendment to the United States Constitution. Nairon was stopped and issued a citation for speeding on July 2, 1991. He was released by the arresting officer immediately after the citation was issued. Nairon was arraigned and pled not guilty on August 18, 1991. On December 2, 1991, he filed a demand for a speedy trial pursuant to the Georgia and United States Constitutions. He was tried by a jury and convicted on March 23, 1992.

The same speedy trial standards apply to claims under the Georgia and United States Constitutions. *Fleming v. State*, 240 Ga. 142, 144 (240 SE2d 37) (1977).[1] "In *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), the Supreme Court of the United States identified four factors to be considered by a court in determining whether an accused's constitutional right to a speedy trial had been violated: . . . (a) the length of the delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) the prejudice to the defendant. . . . The Supreme Court further stated that it regarded none of the factors as either a necessary or sufficient condition to a finding of a deprivation of the right of speedy trial but rather that the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant. As to the prejudice factor there are three interests which the speedy trial right was designed to protect, the last being the most important: (a) to prevent oppressive pre-trial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired." (Citations and punctuation omitted.) *State v. Auerswald*, 198 Ga. App. 183, 184 (401 SE2d 27) (1990).

(a) Length of delay. Almost nine months passed between the date the speeding charge was made and the date of the trial. The passage of this length of time is not alone sufficient to establish a constitutional violation of the right to a speedy trial. Id. Nevertheless, we will assume for purposes of this case that the length of the delay was sufficient to trigger inquiry into the other *Barker* factors. *Barker*, supra, 407 U. S. at 530.

(b) Reason for delay. It appears a large part of the delay was

---

[1] No demand for trial was made pursuant to OCGA § 17-7-170.

attributable to the number of older cases ahead of Nairon on the trial court's docket. There is no evidence that the State deliberately delayed the trial in an effort to gain a tactical advantage. *McClanahan v. State*, 196 Ga. App. 737, 738 (397 SE2d 24) (1990).

(c) Assertion of right. The greater part of the nine-month delay occurred during the five months that expired between the speeding charge and Nairon's assertion of his right to a speedy trial. The defendant's delay in asserting the right to a speedy trial is a factor which weighs against the claim. *Haisman v. State*, 242 Ga. 896, 898-899 (252 SE2d 397) (1979).

(d) Prejudice to the defendant. Nairon was not incarcerated prior to his trial on the speeding charge. Any anxiety he expressed was associated with the difficulty of scheduling his business appointments around his pro se pre-trial and trial appearances in court. Sometime prior to trial, Nairon lost his briefcase containing trial preparation materials and apparently claims that the delay caused or contributed to the loss of these materials and prejudiced his defense. We find no evidence that the delay caused Nairon to lose his briefcase or caused other actual, substantial prejudice to the defendant. *State v. Story*, 209 Ga. App. 404, 406 (433 SE2d 599) (1993).

Considering all of the above factors, the trial court did not abuse its discretion in refusing to dismiss the case. *Vick v. State*, 211 Ga. App. 735, 737-738 (440 SE2d 508) (1994).

2. Nairon contends the trial court erroneously admitted evidence of radar test results showing he was traveling 77 mph in a 65-mph zone without first requiring the State to lay a proper foundation.

While the State was attempting to lay a foundation for the admission of radar test results, Nairon prematurely objected to the admission of the test results. As the trial court noted, the State had not introduced radar evidence at that point and was in the process of attempting to lay a foundation to support admission of the evidence. Subsequently, the State did introduce evidence of the radar test results without any concurrent objection from Nairon. Under *Carver v. State*, 208 Ga. App. 405, 406 (430 SE2d 790) (1993), "a defendant must invoke an evidentiary ruling on the admissibility of radar evidence in order to preserve the adverse ruling on their objection for appeal." *Carver* was decided after the March 1992 trial in the present case and overruled *Johnson v. State*, 189 Ga. App. 192 (375 SE2d 290) (1988), which held that no objection to radar evidence at trial was necessary in order to preserve the admissibility issue for appeal. Accordingly, we will apply the rule existing when the case was tried and address Nairon's arguments regarding the admissibility of the radar evidence, despite his failure to object when the evidence was introduced. See *Grant v. State*, 251 Ga. 434 (306 SE2d 265) (1983).

Nairon argues the State failed to show that the county law en-

forcement agency possessed a license to operate the device in compliance with Federal Communications Commission (FCC) rules as required by OCGA § 40-14-4. See *Wiggins v. State*, 249 Ga. 302, 304 (290 SE2d 427) (1982). The State introduced a copy of the Department of Public Safety (DPS) permit issued to the Houston County Sheriff's Department for the use of the radar speed detection device at issue. The DPS permit "constitute[s] presumptive evidence of compliance with that portion of OCGA § 40-14-4 which provides that '(n)o . . . county . . . law enforcement agency may use speed detection devices unless the agency possesses a license in compliance with [FCC] rules . . .' and, therefore, the actual FCC license need not be produced to demonstrate that compliance." *Brooker v. State*, 206 Ga. App. 563, 564 (426 SE2d 39) (1992).

Nairon also contends the State failed to prove that the device "before being placed in service and annually after being placed in service, [was] certified for compliance by a technician possessing a certification as required by the Department of Public Safety." OCGA § 40-14-4; *Hardaway v. State*, 207 Ga. App. 150, 151 (427 SE2d 527) (1993); *Wiggins*, supra. The State produced evidence that the device was properly certified on August 23, 1990, less than one year prior to the date it was used to measure Nairon's speed on July 2, 1991. The purpose of testing and certifying the device before it is placed in service and annually thereafter is to ensure the initial and continuing accuracy of the device. The State satisfied this foundational requirement by producing a copy of the current certificate of accuracy dated less than one year prior to the use of the device in Nairon's case.

As to Nairon's contentions that the trial court should have sustained his hearsay and best evidence objections to the State's production of copies rather than original documents, the copies were admissible under OCGA §§ 24-7-20 and 24-5-26 to establish the foundational requirements. *Walker v. State*, 204 Ga. App. 559, 561 (420 SE2d 17) (1992); *Williamson v. State*, 194 Ga. App. 439, 440 (390 SE2d 658) (1990).

The trial court did not err in denying Nairon's motion for a directed verdict of acquittal made on the basis that there was no properly admitted radar evidence to prove the speeding charge.

3. Nairon claims the trial court erred in allowing the arresting officer to give his opinion as to the speed of Nairon's vehicle. Nairon objected at trial that no proper foundation had been laid for the officer's opinion testimony. The officer testified that, prior to checking Narion's speed by radar, he observed Nairon's vehicle and that based on his training and experience (3,600 to 4,000 speeding cases) it was his opinion that Nairon was traveling at a speed in excess of 75 mph.

There was a sufficient basis for the officer's opinion and the trial court did not err by admitting the testimony. "Opinion testimony of

an eyewitness may be used to establish speed, its credibility being for the jury to determine, [cit.], and such evidence is sufficient to authorize a jury to conclude that the speeding laws have been violated. [Cit.]" *Brown v. State*, 204 Ga. App. 629 (420 SE2d 35) (1992), overruled on other grounds, 208 Ga. App. 405 (430 SE2d 790) (1993).

*Judgment affirmed. Beasley, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 12, 1994 —
RECONSIDERATION DENIED OCTOBER 31, 1994 — 

Joseph B. Nairon, *pro se.*

Robert E. Turner, Solicitor, Cynthia T. Adams, Assistant Solicitor, for appellee.