S94A1099, S94A1100. BROWN v. THE STATE (two cases).
(450 SE2d 821)

HUNSTEIN, Justice.

Jamie Kenmont Kerien Brown was convicted of malice murder, felony murder, two counts of attempted armed robbery, five counts of possession of a firearm during the commission of a crime, five counts of armed robbery, and two counts of aggravated assault.[*] He appeals from the denial of his motion to dismiss for failure to grant a speedy trial in Case No. S94A1100 and from the guilty verdicts and sentences entered thereon in Case No. S94A1099.

Evidence at trial established that on April 20, 1991, appellant and his co-defendant, Darreyl Tutt, robbed at gunpoint three members of the Chastain family in the parking lot of an Augusta restaurant. Around 4:30 p.m. that same day, Kenneth Cone was in an Au-

---

[*] The homicide occurred on April 22, 1991. Brown was indicted on July 9, 1991 in Richmond County. Brown was found guilty on February 11, 1994 and on February 14, 1994 was sentenced to life in prison for malice murder, and given a life sentence for each of the five armed robbery convictions, a term of twenty years for each of the two aggravated assault convictions, a term of ten years for each of the two attempted armed robbery convictions, and a term of five years for each of the five convictions for possession of a firearm during the commission of a crime, with each sentence upon each count to be served consecutively to each other. Brown filed a notice of appeal on January 28, 1994, seeking to appeal the court's order entered October 18, 1993, denying his motion to dismiss for failure to grant a speedy trial. He filed a second notice of appeal on March 3, 1994, seeking to appeal from the convictions and sentences. Both cases were docketed in this Court on April 15, 1994, and submitted on June 6, 1994.

gusta high school parking lot when he was approached by Tutt and another man and was robbed of his wallet at gunpoint. Less than two hours later, Franklin Staulcup was at an Augusta service station when he was approached by appellant, who held a gun to Staulcup's head, demanded his money, and threatened to kill him. Staulcup fought back and was hit in the head with the gun before he managed to escape.

On April 22, 1991, Philip Gettle was at a convenience store when he was approached by appellant and Tutt, both of whom were armed. Gettle ran and was shot in the shoulder by appellant. Later that day, Henry Bagby saw a taxi cross the street in front of him and roll into a tree. Bagby saw one man exit the back of the taxi and run away, apparently behind another fleeing figure. Bagby went to the assistance of the driver of the taxi, Wilbert Victor Hall, whom he found slumped in the vehicle with a bullet wound in his back. After an ambulance removed Hall to a local hospital (where he died from his injury), Bagby, who knew appellant from school, noticed appellant was at the scene and was wearing clothing similar to that worn by the man he had observed exiting the taxi.

The following evening police stopped a car matching the description of the one used in some of the armed robberies. Appellant was the owner and driver of the car; Tutt was one of the passengers. A pistol identified as similar to the one used in the armed robberies was found in the car. The weapon used to kill Hall was found in Tutt's apartment. In statements made to police, appellant admitted that the pistol in his car belonged to him and that he was in the taxi with Tutt, that he and Tutt had planned to rob the taxi driver, but that it was Tutt who shot Hall.

1. We find this evidence sufficient to support appellant's convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends his constitutional right to a speedy trial was violated[2] under the four-part standard of *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), considering (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. See *Treadwell v. State*, 233 Ga. 468, 469 (211 SE2d 760) (1975). The fourth *Barker* factor is assessed in light of three interests: (i) to prevent oppressive pretrial

---

[2] Appellant was arrested April 23, 1991. A preliminary hearing, a Unified Appeal hearing, and a bond hearing were held in May 1991. Bond was denied. The indictment was returned in July 1991 and an arraignment scheduled that month was continued at the State's request to November 1991. A second Unified Appeal hearing was held on July 20, 1993; appellant filed a Motion to Dismiss for failure to grant a speedy trial the same day. The motion to dismiss was denied October 18, 1993. Trial began January 31, 1994.

incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Id. at 470. "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." (Footnote omitted.) *Barker*, supra, 407 U. S. at 533.

The facts of this case bear a marked similarity to those in *Boseman v. State*, 263 Ga. 730 (438 SE2d 626) (1994). As in *Boseman*, there was a twenty-seven-month delay between appellant's arrest and the date he filed his motion to dismiss, raising a threshold presumption of prejudice, id. at (1) (a); the State's primary reason for the delay was its desire to wait for several significant appellate court decisions to be rendered,[3] but there were other unexplained delays in the record which must be attributed to the negligence of the State, id. at (1) (b); appellant asserted neither his statutory, see OCGA § 17-7-171, nor his constitutional right to a speedy trial for the twenty-seven months between his arrest and the filing of his motion, a delay that must be weighted against appellant, id. at (1) (c); and, as to the three factors involved in determining prejudice to a defendant, even assuming under factor (i) that the delay was oppressive, see id. at (1) (d), appellant has not demonstrated under factor (ii) any isolated or distinct oppressiveness, anxiety, or concern he may have suffered due to his lengthy incarceration, see *Glidewell v. State*, 169 Ga. App. 858, 861 (314 SE2d 924) (1984), and as to factor (iii), the record reflects that the sole example of impairment of evidence adduced by appellant, the memory lapses of various police officers, has worked to appellant's advantage. See Division 3, infra; see generally *Barker*, supra, 407 U. S. at 521.

Considering the record carefully, we find that the trial court did not abuse its discretion in denying appellant's motion to dismiss for lack of a speedy trial. *Boseman*, supra at 734.

3. The State does not challenge appellant's assertion that the trial court committed successive errors by admitting during trial certain portions of appellant's testimony from a pretrial suppression hearing,[4] cf. *Simmons v. United States*, 390 U. S. 377, 394 (88 SC 967, 19 LE2d 1247) (1968); *United States v. Dollard*, 780 F2d 1118 (III) (4th Cir. 1985), and refusing appellant's request to admit his entire suppression hearing testimony, see OCGA § 24-3-38; *West v. State*, 200 Ga. 566 (1) (37 SE2d 799) (1946), on the basis that appellant was

---

[3] The trial court also found the delay to be attributable to the scheduling, briefing and consideration of matters in the Unified Appeal procedure in death penalty cases. See 252 Ga. A-13 et seq. However, there is nothing in the appellate record to reflect these scheduling and briefing delays.

[4] We do not address whether the admission of appellant's testimony was error nor should this opinion be read as intimating any position in that regard.

present to testify. See U. S. Const., Amend. 5; Art. I, Sec. I, Par. XVI, Const. of Ga. 1983; OCGA § 24-9-20 (a). The State argues, however, that the testimony admitted was cumulative of other evidence and thus the errors were harmless. We do not agree and reverse.

The State introduced the testimony of several police officers regarding the circumstances surrounding appellant's arrest and his subsequent incriminating statements. During cross-examination, defense counsel was able to use lapses in the officers' memories to elicit responses that made it appear that appellant was forcibly taken into custody and held against his will in order to elicit his statements. It was in response to the damaging impact of this cross-examination, see Brief of the District Attorney, p. 21, that the State asked to introduce those portions of appellant's suppression hearing testimony which gave the impression that appellant voluntarily cooperated with the police.[5] Thus, the challenged testimony positively reinforced the officers' direct testimony and offset the doubt created by the cross-examination.

"Cumulative evidence" is loosely defined by OCGA § 24-1-1 (2) as that "which is additional to other evidence already obtained."

> [T]he true test as to whether evidence is cumulative depends not only on whether it tends to establish the same fact, but it may depend on whether the new evidence is of the same or different grade. It is only when newly discovered evidence either relates to a particular material issue concerning which no witness has previously testified, or is of a higher and different grade from that previously had on the same material point, that it will ordinarily be taken outside the definition of cumulative evidence.

*Johnson v. State*, 196 Ga. 806 (2) (27 SE2d 749) (1943). Further, "evidence which removes all doubt upon a material point which was before doubtful is not in a legal sense cumulative." *Dougherty v. State*, 7 Ga. App. 91, 94 (66 SE 276) (1909). Given that the challenged testimony could reasonably have been interpreted by the jury as eliminating all doubt created by the cross-examination of the officers as to the voluntariness of appellant's incriminating statements and the greater weight the jury could have accorded such evidence, coming as it did from appellant himself, we cannot agree with the State that it was harmless error to admit those selected portions of appellant's suppression hearing testimony.

---

[5] Contrary to the State's assertion, the transcript does reflect that the defense demonstrated to the trial court how the excluded portions of appellant's suppression hearing testimony would have conveyed a contrary impression.

*Judgment affirmed in Case No. S94A1100 and reversed in Case No. S94A1099. All the Justices concur, except Carley, J., who concurs specially.*

CARLEY, Justice, concurring specially.

In my opinion, the trial court did not transgress the holding of *Simmons v. United States*, 390 U. S. 377 (III) (88 SC 967, 19 LE2d 1247) (1968). For this reason, I must concur specially as to Division 3 of the majority opinion.

The State cannot concede error where there is none. See, e.g., *Busbee v. State*, 205 Ga. App. 533, 534 (423 SE2d 3) (1992); *Shaw v. State*, 211 Ga. App. 647, 649 (2) (440 SE2d 245) (1994). This court must determine for itself whether error exists. *Simmons*, supra, holds only

> that when a defendant testifies in support of a motion to *suppress evidence on Fourth Amendment grounds*, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

(Emphasis supplied.) *Simmons*, supra at 394 (III). In the instant case, the testimony in question had been given at a *Jackson v. Denno* hearing, at which the issue was the admissibility of prior incriminating statements. Thus, *Simmons* is inapplicable. See *United States v. McClellan*, 868 F2d 210, 215 (7) (7th Cir. 1989). I would hold that the only error committed by the trial court was its refusal to honor appellant's request that the entirety of his testimony at the *Jackson v. Denno* hearing be admitted pursuant to OCGA § 24-3-38. I do agree with the majority that this error was not harmless and, therefore, concur in the judgment.

DECIDED NOVEMBER 28, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994.

*David V. Weber, Martin C. Puetz,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General,* for appellee.