### S01A0557. MULLINAX v. THE STATE.
(545 SE2d 891)

THOMPSON, Justice.

Charles Michael Mullinax was convicted of malice murder and theft by taking a motor vehicle, resulting from the strangulation death of Lindsey Strickland.[1] We affirm the judgment of conviction and sentence, but remand to the trial court for further proceedings regarding Mullinax's claim that he was denied effective assistance of trial counsel.

On April 5, 1998, Lindsey Strickland's body was found strangled to death in a pond behind a mobile home on Baytree Drive in Thomasville, Georgia. The residence was unoccupied, but was formerly owned and occupied by Mullinax's mother and sister. It was established that Mullinax had access to the residence and had used it on numerous occasions after it had been vacated.

The victim had been killed within 24 hours of the discovery of her body. Police investigators found a small brown plaid curtain sash hanging on a tree limb at the edge of the water, which matched a set of window curtains inside the residence. They also recovered a blue button, a gold earring, and a false fingernail in the yard of the home, which matched like items on the victim's body. There were gouges in the soil on the bank of the pond where it appeared that someone had slid into the water. Recent tire tracks outside the home were consistent with the tires on the victim's car.

Mullinax and the 19-year-old victim had been dating for about a month. On the day before her disappearance, she told a friend that she was unhappy in the relationship and made the decision to tell Mullinax that she did not want to date him exclusively. On the following evening, she and Mullinax left her apartment together; Mullinax was driving her Pontiac automobile. At 10:45 p.m., neighbors at the Baytree Drive residence heard someone outside screaming for

---

[1] The crimes occurred on April 5, 1998. An indictment was returned on September 9, 1999, charging Mullinax with malice murder and theft by taking a motor vehicle. Trial commenced on May 15, 2000, and on May 19, 2000, Mullinax was found guilty as charged. He was sentenced on the same day to life imprisonment, plus ten years. (Since the court did not specify otherwise, the sentences are to run concurrently. OCGA § 17-10-10.) On June 16, 2000, trial counsel filed a notice of appeal. On December 11, 2000, the trial court granted counsel's petition to withdraw, and on the same day, new counsel entered an appearance on behalf of Mullinax. The case was docketed in this Court on January 3, 2001, and oral argument was heard on March 12, 2001.

help. At about midnight, Mullinax drove up to a local motel. He approached the desk clerk and asked to use a clothes dryer; the clerk recalled that he was alone and that he was driving a dark colored Pontiac automobile. When the clerk refused access to the laundry facilities, Mullinax drove to a friend's house between midnight and 1:00 a.m., and asked to use a clothes dryer. He offered conflicting stories of being thrown in a pool or a mud puddle. Although the friend recognized the Pontiac automobile as belonging to the victim, Mullinax claimed that it was his own. During the course of the next couple of hours, Mullinax remained at the friend's house where he washed his clothes, asked for bandages to cover scratches on his body, clipped his fingernails, and shaved his face twice.

The next day, the victim's family informed the police of her disappearance. Mullinax was questioned and told the investigators that he and the victim had argued the previous night at a gas station. He claimed the victim left her car and got into a car with strangers, abandoning her purse and shoes. At trial, multiple witnesses testified as to the unlikelihood of such behavior by the victim.

Additional witnesses included two inmates who had shared space with Mullinax while he was awaiting trial; each testified as to incriminating statements made by him. Two police officers on assignment at the jail testified that they overheard Mullinax disclose during a telephone conversation, "I might as well tell what I did because it carries a mandatory life sentence."

1. Mullinax challenges the sufficiency of the evidence to support his convictions of both murder and theft by taking a motor vehicle under the standard of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Although largely circumstantial, the evidence was sufficient to enable a rational trier of fact to have found Mullinax guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia,* supra. The jury was authorized to consider evidence that the victim was last seen alive with Mullinax; his conduct and conflicting explanations on the night of her disappearance; his access to the area where the struggle ensued and the body was found; his subsequent inculpatory statements; and his admission that the two had argued on the night of her murder. See generally *Gordon v. State,* 273 Ga. 373 (1) (541 SE2d 376) (2001); *Brinson v. State,* 268 Ga. 227 (1) (486 SE2d 830) (1997).

(b) Likewise, the conviction for theft by taking an automobile was constitutionally supportable. The evidence was uncontroverted that Mullinax was in possession of the victim's car before and after her murder, and that he claimed ownership of the car. The day after the murder, Mullinax relinquished the keys to the victim's grandfather and informed him of the car's location. Theft by taking is com-

mitted when one "unlawfully appropriates any property of another with the intention of depriving him of the property." OCGA § 16-8-2. "Deprive" is defined as permanently or temporarily withholding the property of another without justification. OCGA § 16-8-1 (1) (A). Intent to use the property of another without the owner's authorization evinces an intent to commit a theft. *Sorrells v. State*, 267 Ga. 236 (1) (b) (476 SE2d 571) (1996); *Smith v. State*, 172 Ga. App. 356 (2) (323 SE2d 257) (1984). Clearly, Mullinax could not have obtained the owner's permission to drive the automobile following her death.

2. Mullinax asserts that the two-year delay between arrest and trial violated his Sixth Amendment right to a speedy trial, and that the trial court erred in denying his motions to dismiss the prosecution on that basis.

Mullinax was arrested in Florida on April 6, 1998; he waived extradition and was taken into custody in Georgia on April 9, 1998. An application for bond filed the next month was denied. After Mullinax had been incarcerated for more than 90 days without indictment, he again applied for bond, claiming entitlement under OCGA § 17-7-50. The motion was granted and bond was set at $250,000. His pretrial petition for writ of habeas corpus challenging the amount as excessive was denied. He appealed to this Court, which found no abuse of discretion on the part of the trial court in refusing to reduce the bond. *Mullinax v. Powell*, 271 Ga. 112 (2) (515 SE2d 839) (1999).

In both June and August 1999, Mullinax filed motions to dismiss the prosecution based on the State's failure to try him within a reasonable time after arrest. On September 9, 1999, prior to a ruling on the second motion, a grand jury returned an indictment against Mullinax. Following a hearing, the motion to dismiss was denied on September 21, 1999. Mullinax filed a statutory demand for speedy trial; he was tried on May 15, 2000, which was within the next two terms of court. Twenty-five months had elapsed from arrest to trial.

We examine Mullinax's Sixth Amendment claim that he was denied a right to speedy trial

> under the four-part test of *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), considering (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. . . . The fourth factor requires the court to consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired.

*Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997).

In this case, the 25-month delay from arrest to trial triggers a threshold finding of presumptive prejudice, requiring an analysis of the remaining *Barker* factors. *Boseman v. State*, 263 Ga. 730 (1) (438 SE2d 626) (1994) (27-month delay raises threshold presumption of prejudice). Accord *Jackson v. State*, 272 Ga. 782, n. 8 (534 SE2d 796) (2000) (29-month delay); *Johnson*, supra (21-month delay); *Brown v. State*, 264 Ga. 803 (2) (450 SE2d 821) (1994) (27-month delay); *Hall v. Hopper*, 234 Ga. 625 (1) (216 SE2d 839) (1975) (50-month delay between indictment and guilty plea); *Nealy v. State*, 246 Ga. App. 752 (3) (542 SE2d 521) (2000) (18-month delay). Once the inquiry is initiated, the length of delay is considered a second time by factoring it into the prejudice prong of the *Barker* analysis. *Jackson v. State*, supra at 782, n. 8.

As this Court noted in *Mullinax*, supra, defendant's indictment was delayed because of a backlog in processing evidence at the State Crime Lab. Defendant also compounded the delay by filing an interlocutory appeal of the trial court's decision on a bond petition. Any delay in indictment is benign where there is no evidence that it was attributable to the negligence of the State, or that the State deliberately attempted to delay the trial to hamper the defense. *Boseman*, supra at 732; *Johnson*, supra. As there is no such evidence in this case, this factor is weighed in favor of the State.

In Mullinax's favor is the fact that he did repeatedly assert his right to a speedy trial. Thus, the pivotal factor in this case is the prejudice prong of *Barker*. In *Boseman*, supra, we held that a 27-month delay by itself was insufficient to raise an inference of actual prejudice. But to establish prejudice, the defendant must "show *actual* anxiety and concern and *specific evidence* of how the delay impaired his ability to defend himself." (Emphasis supplied.) *Johnson*, supra at 418, citing *Boseman*. Mullinax makes the generalized assertion that the defense is necessarily impaired when a defendant is incarcerated, and he claims that the oppressive period of pretrial incarceration heightened his anxiety and concern. Assuming arguendo that the 25-month delay in this case constituted "oppressive pretrial incarceration," see *Boseman*, supra at 733 (1) (d), Mullinax has failed to show that he suffered undue anxiety or concern attendant to that incarceration. Anxiety and concern of the accused " '[are] always present to some extent, and thus absent some unusual showing [are] not likely to be determinative in defendant's favor.' " *Boseman*, supra at 733, quoting LaFave and Israel, Criminal Procedure, Vol. 2, p. 410, § 18.2 (1984). Nor has Mullinax offered evidence as to the *specific* manner in which his defense was impaired, "the most important prejudice component of the speedy trial equation." *Boseman*, supra at 734 (2). Though the 25-month delay between arrest and trial is troubling, the prejudice to Mullinax is not of constitutional magnitude. Thus,

the prejudice factor is balanced in favor of the State. Weighing all the *Barker* factors, we hold that Mullinax was not denied his Sixth Amendment right to a speedy trial.

3. It is asserted that the trial court violated OCGA § 24-9-20 by admitting character evidence which suggested that Mullinax had lied to friends about his age and background, and that he failed to grieve for the victim.

The evidence cited by defendant was relevant to the case and was not rendered inadmissible by the fact that it only incidentally placed his character in issue. See *Ware v. State*, 273 Ga. 16 (2) (537 SE2d 657) (2000); *Johnson v. State*, 260 Ga. 457 (2) (396 SE2d 888) (1990).

4. Any challenge to the inadmissibility of evidence of an argument between the defendant and the victim a week prior to her death was not objected to below and is not properly before the court. See *Stratton v. State*, 257 Ga. 593 (3) (362 SE2d 47) (1987).

5. Mullinax claims that he was denied effective assistance of trial counsel. Because his current counsel was retained after trial counsel had filed a notice of appeal, and after 30 days had elapsed from the judgment of conviction and sentence, there was no opportunity to assert a claim of ineffective assistance of trial counsel at the trial level. Therefore, we remand the case to the trial court for appropriate findings concerning the issue of ineffective assistance of trial counsel. *McCulley v. State*, 273 Ga. 40 (4) (537 SE2d 340) (2000).

*Judgment affirmed and case remanded. All the Justices concur.*

DECIDED APRIL 30, 2001.

*J. Converse Bright,* for appellant.

*J. David Miller, District Attorney, Robert R. Auman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ruth M. Bebko, Assistant Attorney General,* for appellee.