S01A0991. THE STATE v. JOHNSON.
(555 SE2d 710)

CARLEY, Justice.

Lisa Johnson was arrested on July 9, 1993, and posted bond and was released from custody on July 21, 1993. In September of 1993, the City of Atlanta Bond Administrator closed the bonding company used by Ms. Johnson because of unpaid outstanding judgments. The grand jury indicted Ms. Johnson on December 10, 1993 for malice murder, felony murder, and aggravated assault. She failed to appear at her scheduled arraignment on January 18, 1994, and a bench warrant was issued on January 31. On June 16, 1994, the trial court entered a judgment against the bonding company for its failure to have Ms. Johnson appear. On November 18, 1999, the criminal case was assigned to the backlog calendar, and an investigator quickly discovered that Ms. Johnson was living with her mother in Kansas City, Missouri. After extradition, the trial court set bond and again

released Ms. Johnson from custody on December 22, 1999. The case appeared on several plea and arraignment calendars throughout the year 2000 and, on September 25, Ms. Johnson filed a plea in bar based upon an alleged violation of her constitutional right to a speedy trial. The trial court sustained that plea, and the State appeals.

The sole issue is whether the trial court abused its discretion in balancing the four factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972) and finding a violation of the constitutional right to a speedy trial in this case. *Torres v. State*, 270 Ga. 79, 81 (2) (508 SE2d 171) (1998). Those four factors are "(1) the length of the delay; (2) the reason for the delay and whether this is attributable to the defendant or the state; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant." *Jackson v. State*, 272 Ga. 782, 783 (534 SE2d 796) (2000). " 'These factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.' [Cit.]" *Brown v. State*, 264 Ga. 803, 805 (2) (450 SE2d 821) (1994). "Absent an abuse of discretion, the decision of the trial court must be affirmed. [Cit.]" *Snow v. State*, 229 Ga. App. 532, 533 (494 SE2d 309) (1997).

1. The extraordinary delay of about seven years from arrest and indictment to trial is more than sufficient to raise a threshold presumption of prejudice and require analysis of the remaining three factors. *Doggett v. United States*, 505 U. S. 647, 652 (II) (112 SC 2686, 120 LE2d 520) (1992); *Barker v. Wingo*, supra at 533-534 (V); *Nelloms v. State*, 274 Ga. 179 (549 SE2d 381) (2001); *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997).

> The delay is then considered a second time by factoring it into the prejudice prong of the *Barker* analysis, with "the presumption that pretrial delay has prejudiced the accused intensif(ying) over time." [Cits.] . . . "[I]t is part of the mix of relevant facts, and its importance increases with the length of delay." [Cit.]

*Boseman v. State*, 263 Ga. 730, 732 (1) (a) (438 SE2d 626) (1994). See also *Doggett v. United States*, supra at 652 (II), 656 (III) (A).

2. The trial court found that each party was partially responsible for the delay. The transcript contains evidence that, in 1993, Ms. Johnson gave the court and the bonding company her Atlanta address, but then left with her mother for Missouri as soon as she was released, and never informed the clerk's office of her new address. However, other evidence indicates that Ms. Johnson gave the police department her mother's address. Indeed, police department records enabled the investigator to locate Ms. Johnson quickly

in 1999. The closing of the bonding company was a neutral factor, but the State concedes that an overcrowded court docket and understaffed law enforcement offices are additional reasons for the delay. While such matters weigh less heavily against the State than intentional delay, they nevertheless must be considered since the ultimate responsibility for their existence rests with the government rather than with the defendant. *Strunk v. United States*, 412 U. S. 434, 436 (I) (93 SC 2260, 37 LE2d 56) (1973); *Barker v. Wingo*, supra at 531; *Lett v. State*, 164 Ga. App. 584, 585 (2) (298 SE2d 541) (1982). "The state's negligence 'still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun.' [Cit.]" *Jackson v. State*, supra at 782-783. Furthermore, those delays during 2000 which were attributable to the prosecutor's lack of preparation must also be considered the result of the State's negligence. *Johnson v. State*, supra at 418 (2). Therefore, the trial court was authorized to find that at least part of the blame for the seven-year delay rests with the State.

3. Ms. Johnson states that she filed a demand for trial on December 22, 1999, only twelve days after learning of the indictment. However, the document to which she refers is simply a demand for a jury trial and does not invoke either a constitutional or statutory right to a speedy trial. *Getz v. State*, 251 Ga. 462 (306 SE2d 918) (1983); *Boyd v. State*, 200 Ga. App. 591 (2) (409 SE2d 44) (1991). Ms. Johnson actually asserted her Sixth Amendment right to a speedy trial on September 25, 2000, shortly before trial was scheduled. Consistent with the ruling of the trial court, however, this delay in invoking her rights weighs no more than slightly against her, because six years of the delay was at least in part attributable to the State and she was unaware of the indictment during that time. See *Doggett v. United States*, supra at 653-654 (II).

4. In analyzing the prejudice factor, we "consider three interests: (i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired." *Brannen v. State*, 274 Ga. 454, 456 (553 SE2d 813) (2001). "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' [Cit.]" *Doggett v. United States*, supra at 654 (III) (A). See also *Barker v. Wingo*, supra at 532 (IV); *Nelloms v. State*, supra at 181. Indeed, the trial court found, as it was authorized to do, that the incarceration lasted only a few weeks and did not involve any mistreatment, and that the pending charges did not produce any unusual anxiety and concern on the part of Ms. Johnson. *Brannen v. State*, supra at 457.

As for impairment of the defense, the State cannot account for an audiotape recording which allegedly contains three phone calls to

911 made by Ms. Johnson begging for help just before she stabbed the victim. The State erroneously contends that defense counsel lost the 911 tape and that the trial court found no evidence that the State ever possessed the tape. To the contrary, there was evidence that the State possessed the original 911 tape and that defense counsel only lost a copy of the tape. Compare *Nairon v. State*, 215 Ga. App. 76, 77 (1) (d) (449 SE2d 634) (1994); *Ould v. State*, 186 Ga. App. 55, 57 (2) (d) (366 SE2d 392) (1988). In its ruling, the trial court never found that the State did not possess the tape, but rather recognized the conflict in the evidence and observed that the defense is not usually in possession of such an original tape and that Johnson presented evidence that the tape lost by defense counsel was a copy. It appears that self-defense is the key issue in this case and that the tape would be highly relevant as an audio recording of the actual homicide with which Ms. Johnson is charged. The loss of such evidence is analogous to the death or disappearance of witnesses, where "the prejudice is obvious." *Barker v. Wingo*, supra at 532 (IV). See also *Brannen v. State*, supra at 457; *State v. Yates*, 223 Ga. App. 403, 404 (477 SE2d 670) (1996). The State relies on the fact that several witnesses listened to the tape before its loss and can testify as to its contents. At the hearing on the plea in bar, however, there were considerable inconsistencies between the testimony of prosecution witnesses and that of defense witnesses regarding the contents of the missing 911 tape. Because there has not been any stipulation as to the tape's contents or any agreement that only defense testimony regarding those contents would be admissible at trial, the prejudice to the defendant from the loss of the evidence has not been "alleviated," as it was in *Brannen v. State*, supra at 458, and *Nelloms v. State*, supra at 181.

The trial court was primarily concerned about the seven-year delay and the loss of evidence which was potentially very helpful to the defense.

> [T]he Supreme Court [of the United States] in *Doggett* held that "consideration of prejudice is not limited to the specifically demonstrable." [Cit.] The Court held that the presumption of prejudice that arises from the passage of time strengthens with the length of the delay and may tilt the prejudice factor in a defendant's favor, although it may not alone carry a Sixth Amendment claim without regard to the other *Barker* criteria. [Cit.]

*Boseman v. State*, supra at 734 (1) (d). Because there were conflicts in the evidence, particularly as to the contents of the 911 tape and the reasons for the extraordinary delay here, we cannot undertake a de novo appellate review of the difficult decision with which the trial

court struggled in this case. Compare *Snow v. State*, supra at 532. In light of all of the evidence and the trial court's findings, especially with regard to the unusually long delay and the loss of potentially critical evidence, we conclude that the trial court, in applying the balancing test first set forth in *Barker*, did not abuse its discretion in sustaining the plea in bar filed by Ms. Johnson. See *Doggett v. United States*, supra; *State v. Yates*, supra at 404.

*Judgment affirmed. All the Justices concur, except Benham and Thompson, JJ., who dissent.*

BENHAM, Justice, dissenting.

The right to a speedy trial is a fundamental right guaranteed to an accused by the Sixth Amendment to the United States Constitution and applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Barker v. Wingo*, 407 U. S. 514, 515 (92 SC 2182, 33 LE2d 101) (1972). It is a "slippery" right "generically different from any of the other rights enshrined in the Constitution for the protection of the accused," it has an "amorphous quality," and its violation results in the "unsatisfactorily severe remedy of dismissal of the indictment" with prejudice. Id. at 519, 522. Because it is a constitutional right the deprivation of which can work to the advantage of the defendant, a trial court's ruling on the subject must be carefully scrutinized. Where, as here, the facts are not in dispute and witness credibility is not at issue, the trial court's application of the law to the undisputed facts is subject to de novo appellate review to determine whether the trial court abused its discretion. *Vansant v. State*, 264 Ga. 319 (1) (443 SE2d 474) (1994); *Snow v. State*, 229 Ga. App. 532 (494 SE2d 309) (1997). After reviewing the record, I conclude that the trial court did abuse its discretion when it concluded that the State was responsible for the delay in prosecuting defendant Johnson and that Johnson was prejudiced thereby to the point that her plea in bar had to be granted. Accordingly, I respectfully dissent to the majority opinion which holds otherwise.

Ms. Johnson's right to a speedy trial attached July 9, 1993, the day she was arrested for aggravated assault,[1] but she did not give voice to that right until she filed a plea in bar over seven years later, on September 25, 2000. In determining whether the delay denied the defendant her right to a speedy trial, the court makes four inquiries: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted [her] right to a speedy trial, and whether [s]he suffered prejudice as the delay's

---

[1] The charge was upgraded to murder upon the death of the victim from his injuries.

result." *Doggett v. United States*, 505 U. S. 647, 651 (112 SC 2686, 120 LE2d 520) (1992).

1. The seven-year delay is presumptively prejudicial under the first prong of the four-part balancing test set forth in *Barker v. Wingo*, and requires the Court to inquire into the other three prongs of the balancing test. *Brannen v. State*, 274 Ga. 454 (553 SE2d 813) (2001); *Mullinax v. State*, 273 Ga. 756, 759 (545 SE2d 891) (2001).

2. Accordingly, I turn first to the reasons for the delay. To a considerable extent, the delay is attributable to the defendant since she left the jurisdiction upon posting bond and did not inform the superior court clerk's office of the address at which she could be reached. In addition, the bonding company that posted the bond for Johnson went out of business. The combination of defendant leaving the jurisdiction without leaving an address with the court and the business failure of the bonding company resulted in the fact that the defendant failed to appear at her January 1994 arraignment, presumably because she did not receive notice of it. Johnson was placed in "bond forfeiture status" and a bench warrant was issued for her arrest for failure to appear. A duplicate bench warrant was issued in December 1999 and, with the help of the FBI, she was located in Missouri and extradited to Georgia, where she was released on bail. After her case made several appearances on plea and arraignment calendars, some of which were reset so that plea negotiations could continue, a November 2000 trial date was set on September 25, the very day Johnson asserted her right to a speedy trial.

There is no evidence that the State intentionally delayed Johnson's trial in order to impair her defense. *Thompson v. State*, 268 Ga. 416 (2) (490 SE2d 91) (1997); *Boseman v. State*, 263 Ga. 730 (2) (438 SE2d 626) (1994). Under these circumstances, any delay attributed to the negligence of the State is relatively "benign. . . ." *Mullinax v. State*, supra, 273 Ga. at 759; *Perry v. Mitchell*, 253 Ga. 593, 595 (322 SE2d 273) (1984). However, the majority charges the State with the delay caused by the defendant having left the jurisdiction because the entity responsible for pursuing bench warrants did not make Johnson's recapture a high priority. Such a holding sends a clear message to those charged with crimes and released on bail — if you leave the jurisdiction for a long enough period of time, your case will be dismissed due to the State's failure to give you a speedy trial.

3. Johnson did not assert her right to a speedy trial at any time from when she was arrested until she filed her plea in bar in which she finally asserted the right. In such a case, the assertion of the right to speedy trial is a factor "entitled to strong evidentiary weight against the defendant. . . ." *Brannen v. State*, 274 Ga. at 456; *Nelloms v. State*, 274 Ga. 179, 181 (549 SE2d 381) (2001). See also *Thomas v. State*, 274 Ga. 492 (555 SE2d 693) (2001). Extensive delay

in asserting the right is weighted against the defendant. *Jackson v. State*, 272 Ga. 782, 785 (534 SE2d 796) (2000). The defendant's "failure to assert the right will make it difficult for [the] defendant to prove [s]he was denied a speedy trial." *Brannen v. State*, supra at 456, quoting *Barker v. Wingo*. In fact, her delay in "making known [her] desire to bring the case to trial evinces instead a desire to avoid trial altogether or at least gain advantage from the delay." *Heinen v. State*, 186 Ga. App. 373, 375 (2) (c) (367 SE2d 275) (1988).

4. The last factor is the prejudice prong, which requires an examination of the "three interests which the speedy trial right was designed to protect" — the prevention of oppressive pre-trial incarceration, the minimization of the defendant's anxiety and concern, and the limitation of the possibility that the defense will be impaired. *Boseman v. State*, supra, 263 Ga. at 732. Ms. Johnson's 23-day incarceration (11 days in 1993 and 12 days in 1999) is hardly oppressive. As for the second sub-factor, anxiety and concern are present to some extent in all cases and, "'absent some unusual showing [are] not likely to be determinative in defendant's favor.' [Cit.]" *Mullinax*, supra; *Boseman*, supra. In support of the last sub-factor, defendant maintains her defense will be impaired because an audiocassette of emergency phone calls made to 911 during her altercation with the victim cannot be found. Since defendant was apparently planning to assert a justification defense, the loss of the audiotape was potentially harmful to her, and we must assess the extent of prejudice resulting from the missing evidence. *Brannen v. State*, supra; *Nelloms v. State*, 274 Ga. at 181. The State points out that it appears the audiotape was in the possession of defense counsel when it was lost, and that several persons, including defense counsel and the defendant's mother, heard the audiotape prior to its loss and could testify to its contents. Thus, the absence of the audiotape does not constitute the prejudice necessary to grant defendant's motion to dismiss based on the failure to afford her a speedy trial. See *Brannen v. State*, supra (affidavit from now-deceased witness alleviates prejudice arising from death of witness); *Nelloms v. State*, supra (defense counsel's ability to argue victim's prior acts of violence alleviates prejudice arising from inability to locate witnesses). The defendant's loss of evidence which she contends materially prejudices her ability to defend may not serve as the basis for granting her plea in bar on speedy trial grounds since there is no evidence that the delay in trying defendant caused defendant to lose the tape. *Nairon v. State*, 215 Ga. App. 76 (1) (d) (449 SE2d 634) (1994). Furthermore, it appears that the loss of the tape was not the result of the passage of time. See *Lynott v. State*, 198 Ga. App. 688 (8) (402 SE2d 747) (1991) (defendant's assertion of prejudice because of missing audiotape of no moment when audiotape was destroyed by State due to bad quality). "[I]f favorable

defense evidence was lost it was because of defendant's own neglect. . . ." *Ould v. State*, 186 Ga. App. 55 (2) (d) (366 SE2d 392) (1988). Since there was no evidence that either the State or the passage of time was responsible for the loss of the tape, defendant did not carry her burden of showing the prejudice necessary to support a dismissal of the murder indictment lodged against her, and the grant of her plea in bar should be reversed. *State v. Story*, 209 Ga. App. 404 (433 SE2d 599) (1993); *State v. Lively*, 155 Ga. App. 402 (1) (270 SE2d 812) (1980); *State v. Weeks*, 136 Ga. App. 637 (222 SE2d 117) (1975), where the appellate courts applied the *Barker v. Wingo* factors and reversed the trial courts' grants of the pleas in bar. The majority's affirmance of the trial court's action sends yet another message to criminal defendants — lose material important to your defense and you can claim prejudice if you are not tried within a year of your arrest or indictment. See *Doggett v. United States*, supra (as the delay approaches one year, it generally is "presumptively prejudicial," requiring an examination of the *Barker v. Wingo* factors). I disagree with both the result reached by the majority opinion and the messages it sends. Accordingly, I respectfully dissent, and I am authorized to state that Justice Thompson joins me in this dissent.

DECIDED NOVEMBER 28, 2001.

*Paul L. Howard, Jr., District Attorney, Michele T. McCutcheon, Alvera A. Wheeler, Assistant District Attorneys*, for appellant.
*Jennifer L. Wheeler*, for appellee.