A96A2244. COLLINGSWORTH v. THE STATE.
(480 SE2d 370)

BIRDSONG, Presiding Judge.

Terry Collingsworth was arrested on October 1, 1994 and charged with driving under the influence of alcohol and being an habitual violator. He was tried and convicted on June 1, 1995.

The evidence showed that on October 1, 1994 at about 3:30 a.m., LaGrange police officer Jamie Melton was sitting in his patrol car, talking to an officer in another car. Melton's car lights were on. He saw a car turn onto Fulton Street, driving on the wrong side of the

road. He recognized Collingsworth driving the car. Fulton Street is a dead-end street with only one way out; Melton waited three or four minutes and then followed. He found appellant's car parked in the driveway of a house at the end of Fulton Street. Appellant was sitting in the driver's seat and two females were sitting in the front passenger seat and back seat. The car was turned off. Melton detected the odor of an alcoholic beverage emanating from the car. When appellant could not produce a driver's license, Melton asked him to get out of the car. Appellant was "basically drunk." A computer check showed appellant's license had been suspended for his being an habitual violator. The officer read appellant his rights and asked him to submit to a state-administered alcohol test but appellant refused.

On cross-examination, defense counsel asked Officer Melton for the name of the person who lived at the address on Fulton Street where appellant had parked his car in the driveway. Melton responded "James Caldwell." Defense counsel asked whether Melton was parked talking to another officer when appellant's car came by and Melton replied, "Yes." Defense counsel then asked: "[What was going on, anything] in particular or [did] the two of you [just bump] into one another on patrol? A: We were keeping a high profile in that area because of drug activity from Mr. James Caldwell's residence and Mr. Caldwell." Defense counsel did not object to this testimony. Later he asked: "Q. Did you impound the car that night? A: Yes, I did. Q: Did you find any drugs in it? A. No I didn't. Q: Did you search it for drugs? A: Yes, I did. I did an inventory search. . . . Q: When you got [in Caldwell's yard], the car was parked in the yard with the ignition off? A: Right."

Jackie Jackson, who lived with appellant, testified as follows: she got off work at 12:00 a.m. She and appellant and two married friends then drove to Fulton Street and went to the house of a friend, James Caldwell. She saw a police car on the side of the road on Fulton Street. She was driving her car, the female friend was in the front seat, and appellant and their male friend sat in the back seat. When they arrived at Caldwell's house he was not home, so "we sat there for a few minutes because he was expecting us." They had been waiting about 40 minutes for Caldwell before Officer Melton arrived. Although Jackson had been driving, appellant was behind the wheel when the officer arrived because Jackson and appellant got out, went to Caldwell's door and knocked; their female friend said she was not feeling well so she lay down in the back seat and her husband went down the street to see if James Caldwell was at another house. When the officer arrived and asked for identification, appellant showed him some form of identification and, according to the officer, "it came back habitual violator, on active parole." Defense counsel further elicited from Jackson that she agreed to a search of the car. "Q: What did

[the officer] appear to be looking for in the car? A: I don't know. He searched the dash, the trunk, and the inside. . . . Q: He didn't find any drugs. . . . A: No, Sir. Q: Did he ask you if any of you had any drugs? A: No, sir." On the State's cross-examination of Jackson, the prosecutor asked whether Caldwell was "someone that you commonly socialize with? A: Yes. Q: *Are you aware that James Caldwell is convicted for drug charges*? A: No, I'm not. Q: Have you ever been convicted of drug charges? A: Yes [in August 1992]." (Emphasis supplied.) She also answered that she had been convicted of possessing cocaine and marijuana. Defense counsel made two objections to impeachment of Ms. Jackson by her criminal convictions and these objections were sustained. The prosecutor (ADA) again asked: *"Ms. Jackson, you're not aware that James Caldwell, that he also was found to have drug charges."* (Emphasis supplied.) At this point, defense counsel objected and moved for a mistrial. The trial court sustained the objection but denied a mistrial and instructed the jury to disregard the question and answer and dismiss them from their minds. The judge asked, "Is there anyone that can't dismiss it? (No response.)" Defense counsel did not insist on a mistrial or contend the curative instructions were insufficient.

On appeal, appellant enumerates five errors below. *Held*:

1. Appellant complains he was denied a speedy trial because he was arrested October 1, 1994 and was not tried until June 1, 1995. During all that time he was unable to get a bond because of a parole hold. He was never indicted, but an accusation was filed on May 2, 1995. The transcript of the hearing on appellant's motion to dismiss the charges shows the seven-month delay between arrest and accusation was caused by the police department's failure to forward appellant's file to the district attorney. The transcript reveals no effort was made by anyone to assert a right to speedy trial until February and April 1995, when defense counsel wrote letters to the district attorney asking that the case be tried as soon as possible.

Defense counsel indicated at the hearing that his research showed that he could not make a speedy trial demand until appellant had been indicted or accused. This perception of the law is incorrect. The Sixth Amendment right to speedy trial attaches when one is arrested and accused or when formal charges are brought. See *Haisman v. State*, 242 Ga. 896, 897 (2) (252 SE2d 397). The "speedy trial" statute, OCGA § 17-7-170, gives the technical right to demand an acquittal to one who has made a timely speedy trial demand after indictment or accusation but has not been tried within a certain time; but even where no indictment or accusation has been filed, the trial court may determine that a criminal defendant has been denied a speedy trial. *Haisman*, supra. There is a balancing test by which the determination is made of such Sixth Amendment violations: "four

factors are weighed to determine whether an accused has been denied his right to a speedy trial. *Barker v. Wingo*, 407 U. S. 514 [(92 SC 2182, 33 LE2d 101)]. These factors are length of delay, reason for delay, defendant's assertion of his right and prejudice to the defendant." *Haisman* at 898. This balancing test is a highly subjective, flexible approach because the defendant has a responsibility to assert a speedy trial claim and unlike the case with other constitutional rights, he may have a potential interest in delaying any trial. *State v. Lively*, 155 Ga. App. 402, 404 (270 SE2d 812). Denial of speedy trial may work to a defendant's advantage, so (absent a statute such as OCGA § 17-7-170) there is no per se prejudice to a defendant from delay of trial. *Harris v. Hopper*, 236 Ga. 389 (224 SE2d 1). "[W]hile the defendant has a right to speedy trial, society has a corresponding equivalent right to bring him to trial; and while the state has a duty to bring him to speedy trial, the defendant has a responsibility to assert that right. Both parties and interests stand alike at the beginning. . . . But since both parties do stand alike at the beginning, when both parties stand alike in their respective failures to provide and assert the right to speedy trial, *then because of the peculiar nature of the individual's right to speedy trial as one whose deprivation can definitely work to his advantage*, the weight of the equities generally lies naturally with society and its right to try the criminal defendant (see *Barker*, supra, p. 536 . . .)." *State v. Lively*, supra at 405.

The motion hearing transcript shows no effort was made by defendant to obtain a speedy trial for many months, and when he finally requested a trial the State accused and tried him as soon as the local terms of court would allow. He alleges that two witnesses became unavailable during the interim, but he cites no particular prejudice arising from these witnesses' absence. See *Crapse v. State*, 180 Ga. App. 321, 324 (349 SE2d 190). The trial court did not err in determining that appellant's Sixth Amendment rights were not offended.

2. The trial court did not err in admitting in evidence, as relevant and admissible, the defendant's refusal to take a blood alcohol test. *Rawl v. State*, 192 Ga. App. 57 (3) (383 SE2d 903).

3. It is plain and obvious from the testimony quoted above that *the State* did not place appellant's character in issue, nor did appellant properly object to the instance wherein the State aroused the issue. It was defense counsel who brought into evidence the fact that police were patrolling the area as a known drug area, that the particular friend whom appellant and his companions drove to visit (James Caldwell) was known for drug activity, and that the police suspected appellant of drug activity and searched his car to find drugs. After freely inviting this evidence including Caldwell's drug activities into the courtroom, defense counsel did not object the first time the State

asked the defense witness whether she knew of Caldwell's drug criminal convictions. When defense counsel later objected and moved for mistrial, the trial court sustained the objection and gave curative instructions to which defense counsel made no exception, and defense counsel did not renew his motion for mistrial. Under these circumstances, appellant was not entitled to a mistrial. *Smith v. State*, 187 Ga. App. 322 (2) (370 SE2d 185).

4. Appellant's complaint about the jury charges is unclear. We find, in any case, that the charge as a whole correctly presents the law in such a way that it was not likely to confuse or mislead the jury. See *Asbury v. State*, 175 Ga. App. 335, 337 (333 SE2d 194).

5. We have reviewed the evidence and we find that it is sufficient to enable a rational trier of fact to find appellant guilty of the offenses charged, beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Beasley and Blackburn, JJ., concur.*

DECIDED JANUARY 27, 1997.

*Wesley T. Leonard*, for appellant.

*Peter J. Skandalakis, District Attorney, Lynda S. Engel, Assistant District Attorney*, for appellee.