IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-KA-00318-SCT

*RONALD A. ZOERNER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/14/96 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MACK A. BETHEA |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED III |
| | WAYNE SNUGGS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 6/18/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/21/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. This case arises from a September 17, 1994, automobile accident on Lake Shore Road in Hancock County, in which a pedestrian (Marguerite Richardson) was killed. On May 1, 1995, Ronald A. Zoerner was indicted for felony driving under the influence and negligently causing Richardson's death. Zoerner was tried, convicted, and sentenced to twenty years in prison by the Hancock County Circuit Court in March, 1996. On appeal, Zoerner raises the following issues for consideration by this Court:

**A. Whether the trial court erred in granting the State's motion to limit the cross-examination of the witness, Michael Moran, prohibiting inquiry as to these previous convictions and interest, bias or motive as such matters might affect his credibility?**

**B. Whether the trial court erred in allowing into evidence the results of the intoxilyzer tests in the absence of the testimony of the officer who calibrated the machine and over the objection**

**of defense counsel; thereby, depriving the defendant of his constitutional right of confrontation?**

**C. Whether the trial court erred in allowing rebuttal testimony by the investigating officer concerning the results of a Mississippi Crime Lab test report; thereby depriving the defendant of his constitutional right of confrontation?**

**D. Whether the State failed to disclose possible exculpatory evidence in the nature of an eyewitnesses to the accident?**

¶2. The dispositive issue in this case is the exclusion of the prior burglary convictions of the State's main witness, Michael Moran. This Court finds that the trial judge erred in excluding Moran's prior burglary convictions, because the circumstances surrounding the convictions were extremely probative of Moran's propensity to tell the truth and his bias or motivation to testify in favor of the State. For this reason, the case is reversed and remanded. The other issues raised by Zoerner are without merit, but will be addressed, to the extent that discussion of these issues could provide guidance on remand for a new trial.

## II. LEGAL ANALYSIS

**A. Whether the trial court erred in granting the State's motion to limit the cross-examination of the witness, Michael Moran, prohibiting inquiry as to these previous convictions and interest, bias or motive as such matters might affect his credibility?**

¶3. Zoerner first contends that the trial judge erred by granting the State's motion *in limine* to exclude evidence of Moran's three prior burglary convictions. The record reflects that, on January 13, 1995, Moran pled guilty to three counts of burglary. The State recommended that Moran be sentenced to ten years in prison on the first count, to run consecutively with seven years in prison on the second count, to run concurrently with seven years in prison on the third count, and that the sentence be suspended and Moran placed in the house arrest program, with three years probation to follow. The trial judge deferred sentencing, so that Moran could be evaluated for the house arrest program.

¶4. Approximately five months after Zoerner's accident, on February 7, 1995, the authorities took Moran from his cell and asked him to give a statement regarding Zoerner. Moran, who was awaiting sentencing on the burglary charges gave a recorded statement, which implicated Zoerner in Richardson's death. On March 29, 1995, the trial court determined that Moran was not eligible for house arrest, and Moran was placed on probation. On April 20, 1995, Moran violated the terms of his probation. His probation was revoked, and he was sent to the penitentiary.

¶5. The trial judge granted the State's motion to exclude the prior convictions and found as follows:

> The Court finds that it is most significant that this potential witness pled guilty in January of '95 and received a recommendation from the State, and it was only subsequent to that that a statement was obtained, and simply because he did not qualify for house arrest, he was then placed on probation and ended up revoking that, and I understand has been sentenced to the penitentiary. . .

Based on those specific facts, I don't think it is proper impeachment. Further, even if it may be proper it is the Court's opinion under [M.R.E.] 609 that the prejudicial effect would far outweigh its probative value. We are not going to get into it. You have made your objection and your request for the record.

¶6. On appeal, Zoerner contends that he should have been allowed to introduce the convictions, in order to impeach Moran's credibility and his motive for testifying. In support of this contention, he cites M.R.E. 616, which provides: "For the purpose of attacking the credibility of a witness, evidence or bias, prejudice, or interest of the witness for or against any party to the case is admissible." The State argues that Moran had already been sentenced for the other crimes, and had no motive to testify against Zoerner.

¶7. "M.R.E. 609 details the circumstances under which prior convictions may be used for impeachment purposes." *Wilcher v. State*, 697 So. 2d 1087, 1094 (Miss. 1997). For crimes such as burglary, that rule provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party . . .

M.R.E. 609 (a)(1).

> "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So.2d 237, 238 (Miss.1990). The discretion of the trial judge, however, must be exercised within the boundaries of the Mississippi Rules of Evidence. *Johnston*, 567 So.2d at 238. *See* M.R.E. 103(a), 104(a).
>
> M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant. M.R.E. 611(b), Comment; *State Highway Com'n of Miss. v. Havard*, 508 So.2d 1099, 1102 (Miss.1987). A judge may limit cross-examination to serve one of the purposes stated in M.R.E. 611(a), to wit: to make the examination effective for ascertaining the truth, to avoid waste of time, and to protect witnesses from harassment or undue embarrassment. M.R.E. 611(b), Comment; M.R.E. 611(a). *See also Sayles v. State*, 552 So.2d 1383, 1386 (Miss.1989) .

*Johnston v. State*, 618 So. 2d 90, 93-94 (Miss. 1993).

¶8. In this case, Moran faced three counts of burglary. He cooperated with the police in Zoerner's case, and he was only sentenced to probation. Moreover, Moran was the State's key fact witness. His testimony is the only evidence that Zoerner drove negligently the night Richardson was killed, and his story is uncorroborated on many other points.

¶9. This is not a case where the State sought to introduce the defendant's prior conviction to impeach the defendant, and the unrelated conviction could be highly prejudicial. Rather, this is a case where

the defendant is seeking to impeach the credibility of the State's primary fact witness. The witness's prior convictions were highly probative of his bias or motive to testify in favor of the State. The probative value of the evidence clearly outweighs the prejudicial effect, if any, on the parties.

¶10. That is, "[i]n this case the defendant's purpose for developing facts as to this conviction was not simply to discredit [the witness] because he had been convicted of such a crime (which may very well have been inadmissible under some provision of Rule 609), but to ferret out any motive or reason [the witness] might have to be such a favorable state witness." *Bevill v. State*, 556 So. 2d 699, 713-14 (Miss. 1990).

¶11. In addition, "[e]vidence that a material witness has received favored treatment at the hands of law enforcement authorities, particularly where that witness is himself subject to prosecution, is probative of the witness' interest or bias and may be developed through cross-examination or otherwise presented to the jury." *Suan v. State*, 511 So. 2d 144, 147-48 (Miss. 1987) (citing *Malone v. State*, 486 So.2d 367, 368-69 (Miss.1986); *Hall v. State*, 476 So.2d 26, 28 (Miss.1985); *Barnes v. State*, 460 So.2d 126, 131 (Miss.1984); *King v. State*, 363 So.2d 269, 274 (Miss.1978); *Sanders v. State*, 352 So.2d 822, 824 (Miss.1977)).

¶12. Therefore, the trial judge abused his discretion by excluding Moran's previous convictions.

**B. Whether the trial court erred in allowing into evidence the results of the intoxilyzer tests in the absence of the testimony of the officer who calibrated the machine and over the objection of defense counsel; thereby, depriving the defendant of his constitutional right of confrontation?**

¶13. The accident occurred September 17, 1994. Over defense objections, the State introduced the intoxilyzer calibration certificates issued by the Mississippi Highway Patrol dated September 6, 1994, and October 4, 1994. Zoerner contends that his right to confrontation was violated by the introduction of these certificates, in the absence of the calibrating officer. However, this argument was squarely rejected in the recent case of *McIlwain v. State*, 700 So. 2d 586 (Miss. 1997). Therefore, Zoerner's argument is without merit. *See McIlwain*, 700 So. 2d at 591.

**C. Whether the trial court erred in allowing rebuttal testimony by the investigating officer concerning the results of a Mississippi Crime Lab test report; thereby depriving the defendant of his constitutional right of confrontation?**

¶14. Throughout the investigation and the trial, Zoerner maintained that he hit a mailbox the night Richardson was killed. During redirect examination, Zoerner's attorney asked him at length if the police ever found blood or human tissue on the car Zoerner was driving. Then, the following exchange occurred between Zoerner and his attorney:

> [BY THE DEFENSE ATTORNEY]: Has there ever been, to your knowledge, in this case or from the police, a lab report from the Crime Lab to show, or a Crime Lab technician testify that they had blood or human tissue anywhere on the car?
>
> [BY ZOERNER]: No, sir.

¶15. Over defense counsel's objection, the State, during cross-examination, asked Zoerner if he

recognized "State's Exhibit 12" for identification (the Crime Lab Report). Zoerner stated that he did not. Also over defense counsel's objection, the State recalled the investigating officer as a rebuttal witness. The officer testified that he sent a sample of Zoerner's broken windshield to the Crime Lab, and that he received a report from the Lab, which indicated that the glass contained matter of human origin. The report was marked for identification, but was never admitted as evidence.

¶16. On appeal, Zoerner contends that his right to confrontation was violated when the results of the lab report were introduced without the testimony of the lab technician who prepared them. He cites cases which are based on the premise that "[o]nly when hearsay evidence qualifies under a 'firmly rooted hearsay exception' can it be admitted over a right to confrontation objection by the defendant." *See Gossett v. State*, 660 So. 2d 1285, 1296 (Miss. 1995) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1987)).

¶17. However, the report was not introduced as evidence. Moreover, it is not hearsay, as it was not introduced to show the truth of the contents of the report, but, rather, the existence of the report. In addition, Zoerner opened the door for the rebuttal evidence by his testimony on redirect examination. *See Smith v. State*, 530 So. 2d 155, 162 (Miss. 1988). *See also James v. Illinois*, 493 U.S. 307, 312 (1990) (even in more egregious cases, where the disputed evidence is illegally obtained, a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt).

¶18. Zoerner opened the door for this evidence when he testified on redirect that he was unaware of such a report. This created the misimpression that no such report existed. The State was within the proper scope of rebuttal, when it introduced evidence of the report's existence. *See Gallion v. State*, 517 So. 2d 1364, 1372 (Miss. 1987) ("No accused should be permitted to deliberately mislead the jury when he knows precisely that the State has in its possession evidence to contradict him, and not expect the State to offer such evidence before the jury [in rebuttal]"). For these reasons, this issue is without merit.

**D. Whether the State failed to disclose possible exculpatory evidence in the nature of an eyewitnesses to the accident?**

¶19. After Zoerner's notice of appeal had been filed, the defense attorney apparently became aware of additional eyewitness testimony. Because defense counsel will have ample opportunity to develop this testimony on remand, this issue need not be addressed.

### III. CONCLUSION

¶20. The defendant should have been allowed to use witness Moran's prior convictions for impeachment purposes. Therefore, this case is reversed and remanded for a new trial, to be conducted in a manner consistent with this opinion. The other issues raised in this appeal are without merit.

¶21. **REVERSED AND REMANDED.**

**PITTMAN, P.J., ROBERTS, MILLS AND WALLER, JJ., CONCUR. BANKS, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. SMITH, J., NOT PARTICIPATING.**

**BANKS, JUSTICE, CONCURRING IN PART:**

¶22. I agree with the result reached by the majority and its reasoning for reaching that result. I write separately to note that I do not agree with the resolution of the issue of hearsay evidence of a lab report. We have held that a party cannot "open the door" to hearsay. ***Murphy v. State***, 453 So. 2d 1290, 1294 (Miss. 1984). To the extent that the majority adopts a different rule, I disagree.

**SULLIVAN, P.J., JOINS THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶23. While the majority's decision correctly reverses the case, it does not provide proper guidance for the trial court to follow on remand. I disagree with the finding of admissibility of the double hearsay evidence given by the investigating officer with regard to the results of the lab report on Zoerner's broken windshield as well as with the introduction of the intoxilyzer calibration certificates. Because of the unresolved confrontation clause problems in these issues, I respectfully dissent.

¶24. The investigating officer testified that he received a lab report indicating that glass from Zoerner's broken windshield contained matter of human origin. The report was not entered into evidence and the technician who prepared the report did not testify. Zoerner raised a timely sixth amendment confrontation clause objection to the officer's hearsay testimony. ***Gossett v. State***, 660 So. 2d 1285, 1296 (Miss. 1995). *See also* ***Spears v. State***, 241 So. 2d 148, 149 (Miss. 1970) (reversible error where doctor's testimony relied on lab report and technicians who prepared report were not offered as witnesses).

¶25. As Justice Banks points out in his separate opinion, a party cannot "open the door" to the admission of hearsay evidence. ***Murphy v. State,*** 453 So. 2d 1290, 1294 (Miss. 1984). Thus, the majority is incorrect in its conclusion that the officer's testimony about the lab report was admissible because Zoerner opened the door by his testimony on redirect examination. As this Court explained in ***Murphy,***

> There is no hearsay exception based upon the scope of examination. You may allow its admission by failing to object to it, but you simply cannot "open the door" to hearsay. Hearsay is incompetent evidence. You may open the door for collateral, irrelevant, or otherwise damaging evidence to come in on cross-examination, ***Reddix v. State***, 381 So. 2d 999 (Miss. 1980); ***Jefferson v. State***, 386 So. 2d 200 (Miss. 1980); ***Sanders v. State***, 219 So. 2d 913 (Miss. 1969), but Mississippi recognizes no rule of law that allows double hearsay to be brought in through this open door.

*Id.* at 1294. To now say that admission of the hearsay testimony was well with the scope of rebuttal is not consistent with our case law or our Rules of Evidence.

¶26. I further disagree with the majority's finding that Zoerner's assertion that his right to confrontation was violated by the introduction of intoxilyzer calibration certificates was "squarely rejected" by this Court's opinion in *McIlwain v. State*, 700 So. 2d 586 (Miss. 1997). The majority misreads *McIlwain.* The case deals only with what is required to lay a proper evidentiary foundation for admission of intoxilyzer calibration certificates, not whether admission of calibration certificates without the testimony of the calibrating officer passes constitutional muster. Nowhere in the *McIlwain* opinion was the confrontation clause issue even discussed.

¶27. Because the majority makes such broad evidentiary rulings without any regard for the defendant's confrontation clause rights, I respectfully dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**