## S97A0464. BROWN v. THE STATE.
(485 SE2d 486)

HUNSTEIN, Justice.

Jay Michael Brown was accused of driving under the influence of alcohol, driving with an unlawful blood alcohol, and other misdemeanors. He filed a motion to suppress the results of his State-administered Intoxilyzer 5000 breath test, alleging, inter alia, that the testing device was not operated with all of its electronic and operating components properly attached and in good working order, as required by OCGA § 40-6-392 (a). At the pretrial hearing on the motion to suppress, the State offered as evidence two certificates of inspection regarding the breath-testing device used on Brown, which were prepared pursuant to OCGA § 40-6-392 (f). A State witness testified that the certificates were maintained in the normal and regular course of business at the police department. Brown's objection to the admission of these certificates on confrontation grounds was denied and we granted Brown's application for interlocutory appeal to consider whether OCGA § 40-6-392 (f) violates a defendant's right to confront the witnesses against him, as guaranteed by the Sixth Amendment to the U. S. Constitution and Art. I, Sec. I, Par. XIV of the Georgia Constitution of 1983. Finding that the statute does not offend a defendant's right of confrontation because the certificates

---

were admissible under the firmly rooted hearsay exception for business records, we affirm.

OCGA § 40-6-392 (f) authorizes as self-authenticating the admission of inspection certificates on breath-testing devices. The statute provides:

> Each time an approved breath-testing instrument is inspected, the inspector shall prepare a certificate which shall be signed under oath by the inspector and which shall include the following language:
>
>> "This breath-testing instrument (serial no. ___ ) was thoroughly inspected, tested, and standardized by the undersigned on (date ___ ) and all of its electronic and operating components prescribed by its manufacturer are properly attached and are in good working order."
>
> When properly prepared and executed, as prescribed in this subsection, the certificate shall, notwithstanding any other provision of law, be self-authenticating, shall be admissible in any court of law, and shall satisfy the pertinent requirements of [OCGA § 40-6-392 (a) (1)] and [OCGA § 40-5-67.1 (g) (2) (F)].

Brown argues that OCGA § 40-6-392 (f) suffers the same constitutional infirmity that led this Court in *Miller v. State*, 266 Ga. 850 (472 SE2d 74) (1996) to hold that OCGA § 35-3-16 violated a defendant's right of confrontation. OCGA § 35-3-16 authorized the admission, in lieu of trial testimony, of a sworn certified copy of the drug analysis from the employee of the GBI Division of Forensic Sciences who analyzed the substance. Acknowledging that the certified copy constituted hearsay evidence, this Court recognized in *Miller* that the confrontation clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant but rather that such evidence can be used to support a criminal conviction where the State has carried its burden of proving that the hearsay evidence bore sufficient indicia of reliability to withstand scrutiny under the confrontation clause. Id. at 853.

> Reliability can be inferred where the evidence falls within a firmly rooted hearsay exception since such an exception "satisfies the constitutional requirement of reliability because of the . . . judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements." [Cit.]

Id. However, we concluded in *Miller* that the certified copy did not fall within the business record exception to the hearsay rule, see OCGA § 24-3-14, because it "contains the conclusion of a third party not before the court. [Cit.]" *Miller*, supra at 854 (3).[1] In this regard, the facts in *Miller* reflect the certified copy authorized by OCGA § 35-3-16 was used in lieu of a lab technician's testimony regarding the weighing of the seized substance with electronic balances and/or mechanical scales, the use of microscopy and gas chromatography/mass spectrometry testing, and the technician's conclusion that the substance tested positive for marijuana.

Although Brown argues the certificate authorized by OCGA § 40-6-392 (a) contains the "conclusion" of a third party not before the court and thus fails to qualify under the business record exception to the hearsay rule, we find the instant case comparable to and controlled by our holding in *Wiggins v. State*, 249 Ga. 302 (290 SE2d 427) (1982), rather than *Miller*, supra. In *Wiggins* this Court addressed a hearsay challenge to the admission of certification of a radar speed detection device, proof of which is required in order to render admissible evidence of speed gained by use of the speed detection device. Id. at 304-305 (2) (a). See OCGA § 40-14-4. We recognized that the "primary purpose [of a radar device certificate] is to serve as a memorandum of the accuracy of the equipment" before it is placed in service, id. at 306 (2) (c), and concluded that although it was "obvious" records containing radar device certificates were kept to be used in speeding cases in which radar speed determinations were to be introduced in evidence, "we nonetheless hold that they are records 'made in the regular course of . . . business' within the meaning of [OCGA § 24-3-14] because the regular course of the 'business' of the Department of Public Safety includes the keeping of records of departmental compliance with [OCGA § 40-14-1] et seq. [Cit.]" Id. We found that "[i]n the usual circumstance, the business record rule should be an adequate vehicle for the introduction into evidence of those portions of the state's proof which are not within the personal knowledge of the arresting officer." Id. at 306 (3).

Unlike the situation in *Miller*, supra, where the certification was merely to obviate the need for a lab technician to testify regarding testing conducted at the lab, breath-testing device certificates share with radar device certificates the primary purpose of serving as a memorandum of the accuracy of the equipment. The Legislature, by enacting OCGA § 40-6-392, "has by statute created procedural safe-

---

[1] The court in *Miller* also concluded the certificate was not admissible under the business record exception because no foundation had been laid for its admission. Id. at 854 (3). That basis is not applicable to the instant appeal, however, as there is no question that the State here laid a proper foundation for the admission of the certificates as business records.

guards to minimize the possibility of erroneous test results" in DUI cases. *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991). Accord *Fisher v. State*, 177 Ga. App. 465 (2) (339 SE2d 744) (1986) (OCGA § 40-6-392 reflects the Legislature's concern with providing accurate evidence as to amount of alcohol or drug in a person's blood at pertinent time). Hence, whether the device measures alcohol concentration level or rates of speed, "[t]he purpose of testing and certifying the device before it is placed in service and annually thereafter is to ensure the initial and continuing accuracy of the device." *Nairon v. State*, 215 Ga. App. 76, 78 (2) (449 SE2d 634) (1994). Further, unlike *Miller*, wherein the certificate represented the findings of the lab technician who performed the analysis which led to the conclusion regarding the nature of the tested material, i.e., whether or not it was an illegal substance, in breath-testing device cases it is the device that performs the analysis which determines a person's alcohol concentration level. As noted by one foreign authority, "in reality the 'witness' against the defendant, the source of the crucial and incriminating evidence, is not the analyst, but the machine itself." *State v. Smith*, 323 SE2d 316, 323 (N.C. 1984). The certificate in issue here addresses only the performance of the breath-testing device in calibration tests conducted to ensure its accuracy when it is subsequently used to analyze a person's alcohol concentration level and in no manner represents or substitutes for the analysis itself.

Furthermore, we disagree with Brown's argument that the certification in issue here contains "conclusions" of the nature that would bar its admission under the business record exception. The certificate language that the device was "thoroughly" tested merely reflects that all required calibration tests were conducted, and thus comments upon the factual extent of the testing as opposed to the opinionative quality of the testing performed. As to the statement that the device is "in good working order," this does not constitute an opinion regarding how "good" the device is, but rather constitutes a factual statement that the device passed the calibration tests conducted on it and can thus continue to be used. Whether or not the device is in good working condition does not involve any conclusion or opinion since it stems from the comparison of the results produced by the device against the acceptable standards approved by the GBI Division of Forensic Sciences, the entity authorized by the Legislature to decide such matters. OCGA § 40-6-392 (a) (1).[2] Although Brown argues the

---

[2] It does not appear from the record that the inspector who performs the calibration tests has any discretion whatsoever in comparing the calibration test results to the accepted standards for the performance of breath-testing devices. We find no merit in Brown's argument that the certification is not admissible as a business record merely because the procedures and acceptable calibration standards utilized by the inspectors have not been pub-

"thoroughly" and "good" language in the OCGA § 40-6-392 (f) certificate distinguishes it from the radar device certificate in *Wiggins*, because the latter indicates solely that it has been "certified for compliance," OCGA § 40-14-4, and thus does not affirmatively state the radar device is "in good working order," the absence of such language is irrelevant given the inference that follows from the fact that a radar device that has been certified and is thus authorized for use, must necessarily be in "good working order" since otherwise it would not have been certified and would not properly be in use.[3]

It thus appears that the breath-testing device certificates provided for in OCGA § 40-6-392 (f) are merely memorials of the fact that all required calibration tests were made and that a particular device passed the tests. Although these certificates are used in litigation, that is not their sole purpose or function. *Nairon v. State*, supra. The record reveals that the breath-testing device certificates are routinely promulgated and maintained. They uncontrovertedly are not made in response to litigation against any one particular individual, unlike the certificate in *Miller* setting forth lab results conducted on specific substances seized from particular individuals and for use only in litigation against those individuals. We therefore conclude that, in the usual circumstance, breath-testing device certificates are

---

lished in the Rules of the Georgia Bureau of Investigation. We note that the State adduced at the hearing on Brown's motion a certified copy of the Area Supervisor Maintenance Inspection Protocol for the Implied Consent Section of the GBI Division of Forensic Sciences, in which was set forth the methods and procedures to be utilized in inspecting the breath-testing device in this case.

[3] As noted by the New Jersey court in *State v. McGeary*, 322 A2d 830, 833 (N.J. Super. 1974) in regard to a breath-testing device inspector's duty to perform an inspection and to record the results thereof honestly and accurately,

[t]he duty of truthfulness in completing the inspection certificate, certifying that the instrument "has been inspected and found to be in good operating order" is compelling. In fact, it is difficult to conceive that a[n inspector] would violate this duty and certify that an instrument had been inspected and found to be in good operating order when in truth and in fact it had not been so found. Certainly, if the inspection of the instrument revealed that it was not operating properly and required repairs or adjustments of any kind, there is little likelihood of and absolutely no reason for the fabrication of the inspection certificate. No purpose would be served thereby. It is not only important to and in the interests of a defendant that the Breathalyzer be in proper operating order, but it is equally important to and in the interest of the State and the citizens thereof. If the instrument were not in good operating order and the readings did not accurately record the percentage of alcohol in the blood, either reporting too high a reading or too low a reading, the presumptions created by [New Jersey law] would be incorrect and the State as well as the accused might be adversely affected. Consequently, there are compelling reasons for the [inspector] to properly and honestly perform his duty in inspecting the instrument and recording the results of his inspection on the certificate.

The footnote omitted from the above quotation set forth the inspection certificate in issue in that case; the certificate provided that a certain instrument "has been inspected and found to be in good operating order" on a set date by a named individual.

records made within the regular course of the business within the meaning of OCGA § 24-3-14 and may, upon the proper foundation being laid, be introduced into evidence under the business record exception to the hearsay rule. See *Wiggins v. State*, supra. See also *Oldham v. State*, 205 Ga. App. 268 (1) (422 SE2d 38) (1992).

The hearsay rule is not co-extensive with the confrontation clause. *California v. Green*, 399 U. S. 149, 155-156 (90 SC 1930, 26 LE2d 489) (1970). However, the U. S. Supreme Court has held that "[o]ur precedents have recognized that statements admitted under a 'firmly rooted' hearsay exception are so trustworthy that adversarial testing would add little to their reliability." *Idaho v. Wright*, 497 U. S. 805, 820-821 (110 SC 3139, 111 LE2d 638) (1990). Because the breath-testing device certificates provided for in OCGA § 40-6-392 (f) come within the firmly rooted hearsay exception for business records, we hold that the certificates may upon a proper foundation being established be admitted at trial without violating a defendant's right of confrontation under the Federal and State constitutions. We note that our ruling is consistent with the conclusion reached by numerous other states that have addressed this issue.[4]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 2, 1997.

*Clarke & Towne, David E. Clarke, Jessica R. Towne,* for appellant.

*Gerald N. Blaney, Solicitor, Richard E. Thomas, William F. Bryant, Allison L. Thatcher, Assistant Solicitors,* for appellee.

*Thurbert E. Baker, Attorney General, Carol A. Callaway, Senior Assistant Attorney General, Kenneth W. Mauldin, Solicitor, Clarke County,* amici curiae.

---

[4] See *State v. Ruiz*, 903 P2d 845, 850 (N.M. App. 1995), citing cases from Alaska, Minnesota, Oregon, Connecticut, Idaho and North Carolina.