# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-01138-SCT

*HENRY HARKINS a/k/a HENRY L. HARKINS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/10/97 |
| TRIAL JUDGE: | HON. LEE HOWARD |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. KESLER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: RODERICK DIXIE WALKER |
| | JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | REVERSED AND REMANDED - 3/31/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/21/99 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On November 1, 1995, Appellant Henry Harkins was tried and convicted of driving under the influence (D.U.I.), second offense, in the Justice Court of Noxubee County. Harkins appealed to the Circuit Court of Noxubee County, where he requested, but was denied, a jury trial. Following a bench trial, Circuit Judge Lee Howard found Harkins guilty and sentenced him to five (5) days imprisonment in the county jail, suspended, and ordered him to pay a fine of $750 plus court costs. Harkins timely appealed to this Court.

### ISSUES

**I**. **Whether the trial court erred in refusing the appellant a trial by jury.**

¶2. The State confesses reversible error in the present case, acknowledging that the trial court erred in refusing Harkins' request for a jury trial.[(1)] Uniform Rules of Circuit and County Court Practice 12.02(c)

provides in part that "[i]n appeals from justice or municipal court when the maximum possible sentence is six months or less, the case may be tried without a jury at the court's discretion ..." Rule 12.02(c) thus only grants the trial court discretion to deny a defendant's request for a jury trial in cases in which the maximum possible sentence is six months or less. This provision is based upon United States Supreme Court decisions presumption that offenses carrying maximum sentences of six months or less are "petty offenses" to which the Sixth Amendment right to trial by jury does not apply. See e.g., *Lewis v. United States*, 516 U.S. 322 (1996); *Blanton v. City of North Las Vegas*, 489 U.S. 538 (1989); *Baldwin v. New York*, 399 U.S. 66 (1970)(plurality).

¶3. Harkins was tried pursuant to Miss. Code Ann. § 63-11-30(2)(b)(1996 & Supp. 1998), which provided (in its version effective July 1, 1995) for a statutory maximum sentence of one year for second offense D.U.I.:

> (b) Upon any second conviction of any person violating subsection (1) of this section, the offenses being committed within a period of ten (10) years, such person shall be fined not less than Six Hundred Dollars ($600.00) nor more than One Thousand Five Hundred Dollars ($1,500.00) and shall be imprisoned not less than ten (10) days nor more than one (1) year.

It is thus apparent that the trial court committed reversible error in denying Harkins' request for a jury trial.[2] The judgment of the trial court is reversed, and the case is remanded for a trial before a jury.

**II. Whether the trial court erred in admitting a Certificate of Calibration of the intoxilyzer.**

**III. Whether the trial court erred in admitting the results of the intoxilyzer test.**

**III. Whether the trial court erred in allowing evidence of the horizontal gaze test.**

**IV. Whether the verdict of guilty of DUI is supported by sufficient evidence.**

¶4. Although the State acknowledges reversible error on the jury trial issue, both parties have requested that this Court address the trial court's decision to admit into evidence two certificates of calibration for the intoxilyzer used in the present case. Harkins objected to the admission of the certificates of calibration on the basis of the "confrontation clause and Rule 701 and 702." Harkins argued that the State should have been required to present the testimony of the officer who conducted the calibration tests, and he argues that the admission of the calibration certificate without this testimony violated the confrontation clause.

¶5. This Court recently rejected an identical argument[3] in *Zoerner v. State* No. 96-KA-00318-SCT, (Miss. June 18, 1998), noting that:

> Zoerner contends that his right to confrontation was violated by the introduction of these certificates, in the absence of the calibrating officer. However, this argument was squarely rejected in the recent case of *McIlwain v. State*, 700 So.2d 586 (Miss. 1997). Therefore, Zoerner's argument is without merit.

*Zoerner*, at 15. In addition to his confrontation clause objection, Harkins argues that the calibration certificate constitutes hearsay evidence which was improperly admitted by the trial court. The State acknowledges that the certificate constituted hearsay but argues that the evidence properly falls under the business records exception and/or the public records exception to the hearsay rule. See: M.R.E. 803(6) and

M.R.E. 803(8)[(4)]. This Court concludes that the calibration certificate was admissible under the business records exception to the hearsay rule, and it is accordingly unnecessary to address the State's argument that the certificates also were admissible under the public records exception.

¶6. Mississippi Rules of Evidence 803 provides in part that:

> The following are not excluded by the hearsay rule, even though the declarant is unavailable as a witness:
>
> (6) **Records of Regularly Conducted Activity**. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or other qualified witness or self-authenticated pursuant to Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

¶7. We conclude that the actions of a calibration officer in performing his customary role of certifying the calibration of intoxilyzers properly falls under the business records exception to the hearsay rule in Rule 803(6), unless "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Thus, the State should properly be permitted to introduce calibration certificates without violating the hearsay rule unless the defendant is able to demonstrate some reason why the presumption of trustworthiness generally granted to business records should not apply in a particular case.

¶8. In *Brown v. State*, 485 S.E.2d 486 (Ga. 1997), the Supreme Court of Georgia analyzed both the hearsay and confrontation clause issues raised by the defendant with regard to the admission of calibration certificates, and this case is thus particularly relevant to the case at bar. With regard to the hearsay issue, the Court unanimously concluded that the certificates were properly admitted under the business records exception to the hearsay rule:

> It thus appears that the breath-testing device certificates provided for in [the applicable Georgia statute] are merely memorials of the fact that all required calibration tests were made and that a particular device passed the tests. Although these certificates are used in litigation, that is not their sole purpose or function. ... The record reveals that the breath-testing device certificates are routinely promulgated and maintained. They uncontrovertedly are not made in response to litigation against any one particular individual .... We therefore conclude that, in the usual circumstance, breath-testing device certificates are records made within the regular course of business ... and may, upon the proper foundation being laid, be introduced into evidence under the business records exception to the hearsay rule. ...

*Brown*, 485 S.E.2d at 489.

¶9. The Georgia Supreme Court in *Brown* also unanimously concluded that, in view of the "firmly rooted" nature of the business records hearsay exception, the admission of calibration certificates without the testimony of the calibrating officer did not violate the confrontation clause under applicable United States

Supreme Court decisions. The Court held that:

> The hearsay rule is not co-extensive with the confrontation clause. ... However, the U.S. Supreme Court has held that "[o]ur precedents have recognized that statements admitted under a `firmly rooted' hearsay exception are so trustworthy that adversarial testing would add little to their reliability." ***Idaho v. Wright***, 497 U.S. 805 (1990). Because the breath-testing device certificates provided for in [the applicable Georgia statute] come from within the firmly rooted hearsay exception for business records, we hold that the certificates may upon a proper foundation being established be admitted at trial without violating a defendant's right of confrontation under the Federal and State constitutions. We note that our ruling is consistent with the conclusion reached by numerous other states that have addressed the issue[5].

485 S.E.2d at at 489-90.

¶10. This Court finds the view expressed by the Georgia Supreme Court in ***Brown*** to be persuasive. We hold that the admission of calibration certificates without testimony from the calibration officer does not, in general, violate either the hearsay rule or the confrontation clauses in the Mississippi or United States constitutions, as long as the proper foundation is laid. Given the disposition of these issues, this Court need not address Harkins' remaining issues, including his assertion that the verdict of guilty was against the overwhelming weight of the evidence.

¶11. The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶12. **REVERSED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶13. I concur that the defendant was entitled to a trial by jury; however, the majority's analysis that the certificates of calibration are business records and, therefore, exceptions to the hearsay rule is flawed. This alcohol-related case is no different than any other drug case. We require crime lab personnel to be present at trial and testify as to the machine calibration and type of drugs found. ***See Kettle v. State***, 641 So. 2d 746, 749 (Miss. 1994); ***Barnette v. State***, 481 So. 2d 788, 792 (Miss. 1985). Why doesn't the same standard apply to this serious misdemeanor involving the drug of alcohol?

¶14. The majority attempts to circumvent our Confrontation Clauses of Section 26 of Article 3 of the Mississippi Constitution and the Sixth Amendment of the United States Constitution by citing the Georgia case of ***Brown v. State***, 485 S.E.2d 486 (Ga. 1997), to admit the certificates of calibration based on

"business records" and the evidence rules regarding hearsay. While the majority uses *Brown* as a justification for its decision, the majority neglects to reveal that the Georgia alcohol test law upon which *Brown* rests contains its own calibration certificate self-authentication clause, which Mississippi law lacks. The majority holds that admission of such calibration certificates without testimony of the calibration officer is legal "as long as the proper foundation is laid" such that the Mississippi Rules of Evidence 803(6) business records exception to the hearsay rule is met. How does the State lay the proper foundation without the officer's testimony? How may the majority justify admission of the intoxilyzer machine results when the defendant is forced to accept as valid the machine's results without confronting the witness against that defendant, i.e., the machine? This type case is no different than any other drug case. The standards should be the same.

¶15. The calibration certificates are the critical element to proving validity of the machine and the defendant's relative guilt for driving under the influence of alcohol. Without having the calibration officer testify and be subject to cross examination, the intoxilyzer's results must be taken as valid despite the fact that the defendant is forced to accept as trustworthy the test without any reassurance that the machine was properly calibrated such that it provided a valid result. The Confrontation Clauses require that the defendant be afforded the opportunity to confront witnesses against him. By not letting Harkins confront "the machine" and its validity through the cross examined testimony of the calibration officer, Harkins' constitutional rights are being trampled. Indeed, we stated such in *Georgia-Pacific Corp. v. McLaurin*, 370 So. 2d 1359 (Miss. 1979), when we said that "[i]n Workmen's Compensation cases the testimony of the doctor as to his 'medical findings' is the sine qua non to recovery under the statute. It is an understatement to say that this testimony is important." *Id.* at 1362. As a result of the constitutional violation here, the burden of proof is switched from the State to Harkins to show that the intoxilyzer test is invalid and Harkins is not guilty. This despite the fact that it is settled law that in a criminal case the burden of proof resides with the State to prove all elements of a particular crime beyond a reasonable doubt. *Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998); *Warren v. State*, 709 So. 2d 415, 420 (Miss. 1998); *Hedrick v. State*, 637 So. 2d 834, 837 (Miss. 1994); *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991); *Sloan v. State*, 368 So. 2d 228, 229 (Miss. 1979); *McVeay v. State*, 355 So. 2d 1389, 1391 (Miss. 1978). Such burden does not shift to the defendant, and it should not here. *Wells v. State*, 698 So. 2d 497, 504 (Miss. 1997); *Brown v. State*, 556 So. 2d 338, 339-40 (Miss. 1990); *McVeay*, 355 So. 2d at 1391.

¶16. It follows that the key issue is that of the Confrontation Clauses. In eschewing the Confrontation Clauses and thereby allowing the burden to shift to the defendant, the majority effectively authorizes the unchecked use of a machine of fluctuating validity. Yet, under the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), to which Mississippi still adheres, neither the State in the instant case nor the manufacturers in general have provided sufficient scientific evidence of the machine's reliability. *See id.* at 1014; *see also Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998). Regarding the machine, the Alabama Supreme Court has stated that the Alabama Department of Forensic Sciences "should adopt particularized rules to ensure that the Intoxilyzer 5000 machines are effectively inspected for accuracy and reliability." *See Ex parte Mayo*, 652 So. 2d 201, 208 (Ala. 1994).

¶17. The Intoxilyzer 5000 machine has not been officially adopted by the Mississippi Legislature and is produced in an oligopoly market in which motivation to perfect the machine may be reduced given the minimal competition between only two manufacturers. When the intoxilyzer test statute was first enacted, the validity of the old machines was not questioned as it was common knowledge that the machine was defective since it only had one filter to process everything through. Yet, few contested the machine's validity

since the fine was relatively diminutive, i.e., less than $100.00. Today the penalty is severe and a serious misdemeanor, or, ultimately on a third offense, a felony.

¶18. Since the time of the intoxilyzer's introduction, the manufacturers have graduated from the Intoxilyzer 3000 model to the 5000 model. However, the two manufacturers embroiled themselves in a Kentucky lawsuit in which they each attempted to show that the other manufacturer's machine was defective. Ultimately, the suit was dropped, which inherently demonstrated that both manufacturers' machines were defective. Apparently, both manufacturers realized that if they continued their suit against each other both machines would indeed publicly be proven defective. Hence, the oligopoly in defective machines continues.

¶19. The Intoxilyzer 5000 results are being excluded by some judges in the Atlanta, Georgia, area.[6] Exclusion of the results is understandable since "dental work such as plates or bridge work, consumption of antibiotics, diet pills, and even M&M candy and white bread can cause alcohol breath-analyzing machines to register as much as a .08," which is dangerously close to Mississippi's .10% level of legal intoxication. *See* William C. Head, *Alcohol Breath Test Machine's Accuracy Disputed Nationally* (last modified June 19, 1996) <http://www.drunkdrivingdefense.com/machnrel.htm>.

¶20. The dangers of the intoxilyzer machine are evident. The right of requiring that the defendant be allowed to confront the witnesses should be inviolate. Accordingly, I dissent in part.

1. It appears from the record that the trial judge was aware of the six month provision regarding jury trials, but that the judge felt there was a conflict in the applicable rules. The judge stated that "(t)he Court feels that it was a mistake in Rule 10.01 in the drafting of the rule, but that 12.02(c) has precedent, and I'm going to proceed under Rule 12.02(c)."

2. The State notes that the trial court also committed error in sentencing Harkins to five days imprisonment, given that § 63-11-30(2)(b) provides for a minimum imprisonment of ten days for second offense DUI.

3. Harkins argues that this Court did not, in fact, squarely address the issue of the confrontation clause violation in *McIlwain*. At any rate, this Court takes the opportunity to address both the hearsay and confrontation clause issues in the present case.

4. This Court recently held in *Zoerner* that the admission of the calibration certificate in that case did not violate the hearsay rule, given that the certificate was not being offered to prove the truth of the matter asserted, but rather to rebut the defendant's statement that he was unaware that such a certificate existed. This Court was not required to determine whether the calibration certificate fell under an exception to the hearsay rule.

5. See, e.g. *State v. Ruiz*, 903 P.2d 845, 850 (N.M. Ct. App.1995), citing other courts reaching a similar conclusion.

6. William Head reports the exclusion of such results in *Alcohol Breath Test Machine's Accuracy Disputed Nationally* as recorded at <http://www.drunkdrivingdefense.com/machnrel.htm>.