## A05A1454. RACKOFF v. THE STATE.
### (621 SE2d 841)

ELLINGTON, Judge.

Stewart Daniel Rackoff was accused of driving under the influence in a June 2001 incident. Rackoff appeals the trial court's January 20, 2005 order denying his motion for discharge and acquittal on the grounds that the state violated his constitutional right to a speedy trial. He also claims the trial court erred by denying (i) his motion to strike the inspection certificate of the instrument used to perform his breath test and (ii) his motion to exclude the results of his breath test on the grounds that he was refused access to counsel. We discern no error and affirm.

1. Rackoff claims the trial court erred in denying his motion for discharge and acquittal on the grounds that he was denied his Sixth Amendment right to a speedy trial. We disagree.

In reviewing the trial court's finding that Rackoff was not denied his constitutional right to a speedy trial, the issue is whether the trial court abused its discretion in balancing the four factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). *State v. Johnson*, 274 Ga. 511, 512 (555 SE2d 710) (2001). "Those four factors are (1) the length of the delay; (2) the reason for the delay and whether this is attributable to the defendant or the state; (3) the timeliness of the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. These factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." (Citations and punctuation omitted.) Id.

(a) The first *Barker* factor is the length of the delay. Rackoff was arrested on June 9, 2001 and filed his motion for acquittal on January 11, 2005, a week before his scheduled bench trial. The trial court acknowledged that the case was "pending longer than is normal in this division." Given that 43 months passed from Rackoff's arrest and his motion for discharge and that Rackoff's case was not brought to trial within the normal time frame, the trial court properly proceeded to examine the three remaining *Barker* factors, as required when the delay is found to be presumptively prejudicial. See *State v. Redding*, 274 Ga. 831, 832 (561 SE2d 79) (2002) (27-month delay raises presumption of prejudice). Compare *Wimberly v. State*, 279 Ga. 65, 66 (608 SE2d 625) (2005) (a threshold showing that a defendant's case

was not prosecuted with customary promptness triggers an inquiry using the *Barker* factors).

(b) The trial court considered the reasons for the delay, the second factor, by examining the procedural history of the case. Rackoff's case was originally scheduled to be heard in the Duluth City Court in August 2001, but was subsequently bound over to the State Court of Gwinnett County after Rackoff demanded a jury trial. In March 2002, Rackoff filed a motion in limine to exclude the results of the breath test, and the trial court granted the motion in May 2003. After granting the state's application for an interlocutory appeal, we reversed the trial court's order granting Rackoff's motion in limine on November 14, 2003.[1] The trial court received the remittitur on January 8, 2004. After his case was placed on the two week jury calendar, Rackoff waived his right to a jury trial, and the trial court granted his request for a bench trial. At an April 7, 2004 hearing, the trial court heard additional pre-trial motions from Rackoff. The trial court denied the motions on September 10, 2004. Rackoff's trial was subsequently set for January 18, 2005.

Rackoff contends that most of the delay in reaching trial was caused by the state, and that the reason for the delay is a factor that should be weighed in his favor. In particular, Rackoff points to the delay caused by the state's decision to file an interlocutory appeal. Compare *Mullinax v. State*, 273 Ga. 756, 759 (2) (545 SE2d 891) (2001) (defendant compounded the delay in indictment by filing an interlocutory appeal of the trial court's decision on a bond petition). However, the delay caused by the state's successful appeal must be considered benign because there is no evidence that the delay was attributable to the state's negligence or the state's deliberate attempt to delay the trial to hamper the defense. See id. (no evidence state's negligence or deliberate act caused delay in indicting defendant). The remainder of the delay was largely attributable to the trial court's consideration of Rackoff's pre-trial motions, and the state cannot be faulted on this account. See, e.g., *Abiff v. State*, 260 Ga. 434, 435 (2) (396 SE2d 483) (1990) (delay mostly caused by defendant's efforts in pursuing motion to acquit and not any acts of the state). We conclude that the circumstances for the delay in bringing Rackoff's case to trial are "essentially neutral in determining whether appellant has been deprived of his right to a speedy trial." *Crapse v. State*, 180 Ga. App. 321, 324 (1) (b) (349 SE2d 190) (1986).

(c) The third factor is the timeliness of the defendant's assertion of the right to a speedy trial. The trial court considered that Rackoff waited until January 2005 to assert his right to a speedy trial, a delay

---

[1] See *State v. Rackoff*, 264 Ga. App. 506 (591 SE2d 379) (2003).

of 43 months from his arrest. See *Watkins v. State*, 267 Ga. App. 684, 685-686 (c) (600 SE2d 747) (2004) (delay of 42 months from date of arrest to raising of constitutional right to speedy trial weighed against defendant). "While the defendant has a right to speedy trial, society has a corresponding equivalent right to bring him to trial; and while the state has a duty to bring him to speedy trial, the defendant has a responsibility to assert that right." (Citation and punctuation omitted.) *Collingsworth v. State*, 224 Ga. App. 363, 366 (1) (480 SE2d 370) (1997). Rackoff failed to make a timely assertion of his right to a speedy trial, and the failure "is entitled to strong evidentiary weight against [him]." (Punctuation and footnote omitted.) *Watkins*, 267 Ga. App. at 686 (c).

(d) The final *Barker* factor is prejudice. For purposes of analyzing prejudice, the courts have identified three interests: "(i) preventing oppressive pretrial incarceration, (ii) minimizing anxiety and concern of the defendant, and (iii) limiting the possibility that the defense will be impaired." (Citation and punctuation omitted.) *Chappell v. State*, 272 Ga. App. 1, 3 (611 SE2d 157) (2005). As the delay also raised the presumption of prejudice, the length of the delay is "considered a second time by factoring it into the prejudice prong of the *Barker* analysis." (Citation omitted.) *State v. Johnson*, 274 Ga. at 512 (1). The trial court concluded that Rackoff failed to show prejudice attributable to the delay apart from the normal stress and worry associated with a pending criminal case.

Rackoff admits he was not incarcerated while awaiting trial, but contends that he did present evidence of his anxiety and concern through his affidavit showing his "enormous amount of stress and concern" as he awaited the outcome of the case. However, "[a]nxiety and concern of the accused are always present to some extent, and thus absent some unusual showing are not likely to be determinative in defendant's favor." (Citation and punctuation omitted.) *Mullinax*, 273 Ga. at 759 (2). Having reviewed the record in this case, we conclude the trial court was authorized to find Rackoff failed to show such an unusual level of anxiety and concern.

Rackoff also claims his defense was impaired by the disappearance of the witness who was present in the car with him when he was arrested. According to Rackoff's affidavit, the witness told Rackoff that he was moving "back up north, and that he would call [Rackoff] with his new contact information," but Rackoff never heard from him. "If witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U. S. at 532. The affidavit does not show, however, that Rackoff attempted to locate the witness. Rackoff's lack of knowledge as to the location of the witness is not equivalent to a showing that the witness had "disappeared." See *Buxton v. State*, 253 Ga. 137, 140 (4) (317 SE2d 538) (1984) (no effort was made to secure the

presence of two witnesses claimed to be unavailable); *Shuler v. State*, 263 Ga. App. 124, 127 (4) (587 SE2d 269) (2003) (defendant showed he was unable to reach two witnesses but not that they would be unavailable for trial). Accordingly, the trial court's conclusions as to the lack of prejudice are warranted by the evidence.

Because the reasons for the delay in bringing Rackoff's case to trial were neutral, Rackoff failed to timely assert his right to a speedy trial, and Rackoff failed to show prejudice attributable to the delay other than his stress and concern in awaiting trial, we conclude the trial court did not abuse its discretion in balancing the *Barker* factors and denying Rackoff's motion for discharge and acquittal.

2. Rackoff claims the trial court erred in denying his motion to strike the inspection certificate of the instrument used to conduct his breath test because he was denied his constitutional right to confront the witnesses against him. We disagree.

"Unless a recognized exception applies, hearsay testimony is inadmissible. When an affidavit contains material not admissible in evidence, it is subject to a motion to strike. Absent a finding of an abuse of discretion, a trial court's decision to admit testimony as an exception to the rule against hearsay will not be disturbed." (Citations omitted.) *Intl. Biochemical Indus. v. Jamestown Mgmt. Corp.*, 262 Ga. App. 770, 776 (3) (586 SE2d 442) (2003).

The inspection certificate at issue here was prepared under authority of OCGA § 40-6-392 (f), which provides that "[e]ach time an approved breath-testing instrument is inspected, the inspector shall prepare a certificate which shall be signed under oath by the inspector." The certificate is required to state that the instrument's " 'electronic and operating components prescribed by its manufacturer are properly attached and are in good working order.' " Id. A properly prepared and executed certificate is self-authenticating and is admissible in any court of law. Id.

Rackoff acknowledges that in *Brown v. State*, 268 Ga. 76, 81 (485 SE2d 486) (1997), the Supreme Court of Georgia held that the admission of a certificate prepared under authority of OCGA § 40-6-392 (f) did not violate the Confrontation Clause. Nevertheless, Rackoff contends that *Brown*'s assessment of OCGA § 40-6-392 (f) must be revisited in light of *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). Under *Crawford*, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U. S. at 68. See *Porter v. State*, 278 Ga. 694, 696 (3) (606 SE2d 240) (2004).

Rackoff claims that the inspection certificate was inadmissible under *Crawford* because it was the "testimonial" hearsay of an unavailable declarant whom he had no opportunity to cross-examine,

and that OCGA § 40-6-392 (f) unconstitutionally provides for the admission of testimonial hearsay. We disagree. In *Crawford*, the United States Supreme Court refused to "spell out a comprehensive definition of 'testimonial,'" holding that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U. S. at 68. However, the Court's analysis indicated that business records by their nature are not testimonial statements. Id. at 56. Furthermore, the statements specifically determined to be "testimonial" in *Crawford* were given in a prosecutorial or investigatory setting. "Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse." Id.

In *Brown*, the Supreme Court of Georgia held that a certificate of inspection is simply a record made in the regular course of business. 268 Ga. at 78. See also *Jackson v. State*, 233 Ga. App. 568, 570 (2) (504 SE2d 505) (1998). The Court also concluded (i) that the certificates' primary purpose was to ensure the testing machines' accuracy, (ii) that the certificates were factual statements and not opinions, (iii) that the certificates were not prepared in response to litigation against any particular individual, and (iv) that "the witness against the defendant, the source of the crucial and incriminating evidence, is not the analyst, but the machine itself." (Citation and punctuation omitted.) *Brown*, 268 Ga. at 79. Considering *Brown*'s conclusion that the certificates prepared under OCGA § 40-6-392 (f) are records which are routinely maintained and promulgated and which are not made in anticipation of prosecution against any particular defendant, see id. at 80, we hold that the inspection certificate at issue here was not "testimonial" hearsay under *Crawford*. It follows that the trial court did not abuse its discretion by refusing to strike the certificate. See *Crawford*, 541 U. S. at 68 (with respect to nontestimonial hearsay, it is consistent with the Framers' design to afford the states flexibility in their development of hearsay law).

3. Finally, Rackoff contends the trial court erred in denying his motion in limine to exclude the breath test results because he was denied freedom of access to a lawyer. Again, we disagree.

"In reviewing a trial court's decision on a motion in limine where the evidence is uncontested and there is no question regarding witness credibility, we conduct a de novo review of the trial court's application of law to undisputed facts." (Citation omitted.) *State v. Hoover*, 253 Ga. App. 98 (558 SE2d 71) (2001).

Evidence adduced at the motion hearing showed that after Rackoff was arrested and the arresting officer had explained his implied consent rights, but before he agreed to take the state-administered breath test, Rackoff asked the arresting officer for

access to a telephone so that he could seek advice of counsel. The officer refused Rackoff's request and told Rackoff that he could not call counsel until after the breathalyzer test had been administered and he had been "booked." Rackoff argues that the officer's refusal to allow him to speak with an attorney before he submitted to the breath test denied his rights to counsel and due process of law. Controlling precedent provides, however, that "[o]ne is not entitled to advice of counsel when confronted with a decision as to whether to submit to a test under the Implied Consent Law." (Citation and punctuation omitted.) *Oyler v. State*, 175 Ga. App. 486, 487 (1) (333 SE2d 690) (1985). Accord *State v. Boger*, 253 Ga. App. 412 (1) (559 SE2d 176) (2002) (noting defendant had no right to counsel when requested to submit to a breath test); *Rawl v. State*, 192 Ga. App. 57, 58 (4) (383 SE2d 903) (1989). The trial court did not err by refusing to exclude the breath test on the grounds that Rackoff was denied his right to an attorney.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 5, 2005 — 

*Robert W. Chestney*, for appellant.

*Gerald N. Blaney, Jr., Solicitor-General, Emilien O. Loiselle, Jr., Assistant Solicitor-General*, for appellee.